The **NATIONAL INDUSTRIAL TRAFFIC LEAGUE, Plaintiff,**

v.

**UNITED STATES et al., Defendants.**

**Civ. A. No. 74–1119.**

United States District Court, District of Columbia.

July 11, 1975.

John F. Donelan, Frederic L. Wood, Washington, D. C., for plaintiff.

Charles H. White, Jr., James K. Kurth, Interstate Commerce Commission (ICC), John H. D. Wigger, Dept. of Justice, Washington, D. C., for defendants.

Before MacKINNON, Circuit Judge, and CORCORAN and GESELL, District Judges.

## OPINION AND ORDER

CORCORAN, District Judge:

Plaintiff, the National Industrial Traffic League, is a voluntary, unincorporated association of shippers and organizations of shippers located throughout the United States.

The plaintiff seeks to enjoin and set aside an order of the Interstate Commerce Commission (ICC) which modified certain credit regulations applicable to household goods carriers. *Payment of Rates and Charges of Motor Carriers Credit Regulations—Household Goods,* 118 M.C.C. 778 (1973).

The plaintiff has properly invoked the Court's jurisdiction. 28 U.S.C. §§ 2284, 2321–25 (1970).

The parties have filed cross-motions for summary judgment and the action is thus ripe for decision on the merits. *Fed.R.Civ.P.* 65(a)(2).

After considering briefs and hearing oral argument, we conclude that the ICC acted within its statutory authority after adequate notice, and that there was a rational basis for its decision. Accordingly, we affirm.

### I

In 1967, the ICC promulgated a regulation, 49 C.F.R. § 1322.1(a) (1974),[1] al-lowing household goods carriers to extend to national account shippers[2] credit in the amount of the charges for a period of seven days. Under this regulation, it was the industry practice for the carriers to extend credit on a regular basis to national account shippers.

This seven-day free credit period was prescribed by the ICC pursuant to its authority under § 223 of the Interstate Commerce Act, 49 U.S.C. § 323 (1970).[3] That section prohibits any motor common carrier from delivering any freight which it has transported until all rates and charges have been paid. However, the ICC is authorized to prescribe regulations for the settlement of those rates and charges, "including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice." *Id.*

In early 1970, after a petition for rule-making was filed with it seeking the amendment of 49 C.F.R. § 1322.1(a), the ICC issued a Notice of Proposed Rulemaking and Order, the purpose of which was to determine "whether and to what extent" the existing regulation concerning the seven-day free credit period should be modified or changed, and whether carriers should be allowed to impose a penalty charge upon those shippers who failed to pay within the credit period. After receiving comments by various parties, including shippers and carriers, the Commission, without a

---

1. 49 C.F.R. § 1322.1(a) provides in pertinent part:

    *Extension of credit.* Upon taking precautions deemed by them to be sufficient to assure payment of the tariff charges within the credit period herein specified, common carriers by motor vehicle may relinquish possession of freight in advance of the payment of the tariff charges thereon and may extend credit in the amount of such charges to those who undertake to pay them, such persons herein being called shippers, for a period of 7 days excluding Saturdays, Sundays and legal holidays.

2. National account shippers, in ICC parlance, are substantial, often national businesses and industries which frequently move their employees and are thus regular customers of household goods carriers.

3. § 223 provides in pertinent part:

    No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice . . . .

hearing, issued in 1973 the rule challenged here by plaintiff.[4]

## II

At oral argument, plaintiff advanced three reasons why the decision should be set aside, *viz*: (1) that the ICC lacks power under § 223 to promulgate the amended regulation; (2) that the notice of rule-making was inadequate; and (3) that there is no rational basis for the ICC decision.[5] We have examined each of these contentions and find them to be without merit.

■ (1) We begin with the proposition that the ICC has broad rule-making authority to regulate the motor carrier industry. *American Trucking Association v. United States*, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953). Moreover, "(t)he Commission, faced with new developments or in light of reconsideration of the relevant facts and its mandate, may alter its past interpretation and overturn past administrative rulings and practice." *American Trucking Associations v. Atchinson, Topeka & Santa Fe Ry.*, 387 U.S. 397, 416, 87 S.Ct. 1608, 1618, 18 L.Ed.2d 847 (1967). Indeed, substantive rule-making by an agency is generally recognized by the courts to be a fair, innovative and resource-saving technique. *National Petroleum Refiners Ass'n v. Federal Trade Commission*, 157 U.S.App.D.C. 83, 482 F.2d 672 (1973).

■ As noted previously, the Commission, pursuant to its authority under § 223, established in 1967 the seven-day free credit period. There is no suggestion by plaintiff that that action by the Commission was beyond its statutory mandate, nor, for that matter, does plaintiff object to a simple extension of the free credit period. Rather, plaintiff's major premise is that the mandatory imposition of this 1% service charge is an unlawful regulation of shippers. For support plaintiff relies on a prior ICC decision in which it was held that shippers are beyond the reach of § 223 and any regulations promulgated thereunder. *Regulations for Payment of Rates and Charges*, 326 I.C.C. 483, 489 (1966).

However, plaintiff misconceives the thrust of the new rule and the ICC's authority to promulgate it. The new rule does no more than extend the free credit period. It is, by its terms, directed at the carriers, not shippers. Should a carrier extend credit to a shipper—and there is nothing in either § 223 or 49 C.F.R. § 1322.1 which requires a carrier to do so—and should that carrier not receive payment within the seven-day period, the carrier then may extend credit for an additional 23 days provided that it adds a 1% service charge to the amount due. The fact that it is the shipper who ultimately pays the service charge does not obscure the Commis-

4. By subsequent Commission order, the amendment at issue became effective August 14, 1974. 39 *Fed.Reg.* 29188. The amendment, now set out at 49 C.F.R. § 1322.1(c) (1974), provides in pertinent part:

> *Exceptions—Carriers of household goods.* Except as provided in paragraph (b) of this section, motor common carriers of household goods must also provide in their tariffs that (1) ·the aforestated credit period of 7 days excluding Saturdays, Sundays, and legal ·holidays shall automatically be extended to a total of 30 calendar days for any shipper who has not paid the carrier's freight bill within the aforesaid 7-day period, (2) such shipper will be assessed a service charge by the carrier equal to 1 percent of the amount of said freight bill, subject to a $10 minimum

charge, for such extension of the credit period, and (3) no such carrier shall grant credit to any shipper which fails to pay a duly presented freight bill within the 30-day period, unless and until such shipper affirmatively satisfies the carrier that all future freight bills duly presented will be paid strictly in accordance with the rules and regulations prescribed by the Commission for the settlement of carrier rates and charges.

5. Plaintiff has apparently abandoned two other claims made in its complaint, namely, that the ICC prescribed the service charge without a hearing and without making findings of fact and conclusions of law, both assertedly required by law.

sion's authority under § 223 to provide rules and regulations for the weekly or monthly settlement of the carrier's accounts. Similarly, in an analogous situation, the ICC has utilized demurrage charges to be paid to the shippers after an initial period of free time, to encourage the prompt use and return of freight cars. *Demurrage Rules and Charges Nationwide*, 340 I.C.C. 83 (1971), *aff'd sub nom., General Mills, Inc. v. United States*, 364 F.Supp. 1278 (D.Minn.1973) (three-judge court) [(authority based on 49 U.S.C. § 1 (15))].

Plaintiff also ignores the pervasive impact of the Commission authority over the total transportation system, recently emphasized by the Supreme Court in *Interstate Commerce Commission v. Oregon Pacific Industries, Inc.*, 420 U.S. 184, 95 S.Ct. 909, 43 L.Ed.2d 121 (1975). In that case, the Court unanimously upheld the Commission's authority under § 1(15), to require a shipper, holding lumber cars at reconsignment points for more than five days, to pay the sum of the rates from the origin point, to the hold point, to the destination point.

Although in this case the Commission is not invoking its emergency powers under § 1(15), as it did in *Oregon Pacific*, we hold that the Commission had the power to promulgate these credit regulations under § 223.

(2) We hold that, under the circumstances of this case, the Commission's notice of proposed agency action was adequate and that plaintiff was not deprived of *any* opportunity to participate fairly in the proceedings before the Commission.

■ Under 5 U.S.C. § 553, the agency's notice to the public is sufficient if the substance of the proposed agency action is presented. *California Citizens Bank Ass'n v. United States*, 375 F.2d 43, 48–49 (9th Cir.), *cert. denied*, 389 U.S. 844–45, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967). *See also American Airlines v.*

*C. A. B.*, 123 U.S.App.D.C. 310, 315, 359 F.2d 624, 629 (1966) (*en banc*).

■ While the notice of proposed rule-making stated only that the ICC would consider *whether* to impose a penalty charge on a recalcitrant shipper, the ultimate decision of the ICC to impose a *mandatory* extension of credit and service charge does not rise to the level of violating the fair notice provisions of § 553. The Commission, in its notice, had alerted the household goods industry that the existing credit regulations might be modified or changed, and the mandatory requirements were well within the intendment of the hearings.

In our view, the Commission's decision amending 49 C.F.R. § 1322.1 was determined within a proper framework, and plaintiff was thus afforded adequate notice.

■ (3) Finally, we discern a rational basis in the Commission's decision. *See Bowman Transportation v. Arkansas-Best Freight System*, 419 U.S. 281, 284–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). There is no basis to characterize the Commission's decision as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 10(e)(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). To the contrary, there is ample evidence in the record to support the ICC finding that the seven-day free credit period provided in the old rule was being abused. The national account shippers, considered as a group, had not been paying their accounts within the seven-day period, and the carriers, in turn, had been ignoring the delay in payments, presumably because the national accounts were so lucrative. The Commission, in its expertise, found that prompt payment of accounts was necessary to preserve strong competition among the carriers for the traffic of the national account shippers. Any extension of the free credit period, the ICC noted, would have an adverse effect on some carriers since they, as an industry,

operate on a high cash flow. Indeed, the ICC laid the primary blame on this late payment situation directly on the shippers who demanded a pre-audit of billing documents before payment, rather than a post-audit. Moreover, the Commission stated that any extension of the free credit period would be inconsistent with the mandate of § 223 that such regulations "prevent unjust discrimination" since ordinary household and smaller shippers do not enjoy any free credit period and must pay the carrier's charges before the shipment is unloaded. 118 M.C.C. 795–96.

Viewed in that perspective, we cannot say that the Commission, applying its long acquired expertise in the transportation field, abused its discretion in requiring carriers, who have extended seven days free credit to a shipper, to impose a 1% service charge on such shipper if his account is not paid during that period. It appears entirely reasonable for the Commission to eliminate discrimination in the household goods industry by inducing credit shippers, regardless of size, to render prompt payments and by penalizing those shippers who fail to do so.

### III

Accordingly, it is, by the Court, this 11th day of July, 1975,

Ordered, adjudged and decreed that the Interstate Commerce Commission decision in *Payment of Rates and Charges of Motor Carriers Credit Regulations— Household Goods* be, and the same is hereby, affirmed; and it is further

Ordered, adjudged and decreed that plaintiff's motion for summary judgment be, and the same is hereby, denied; and it is further

Ordered, adjudged and decreed that defendants' motion for summary judgment be, and the same is hereby, granted; and it is further

Ordered, adjudged and decreed that judgment be, and the same is hereby, entered in favor of the defendants in the above-entitled action.