**AMERICAN FROZEN FOOD INSTITUTE, Plaintiff,**

v.

**F. David MATHEWS and Alexander M. Schmidt, Defendants.**

**Civ. A. No. 74–354.**

United States District Court, District of Columbia.

March 30, 1976.

Edward Brown Williams, Jan Edward Williams, Washington, D. C., for plaintiff.

Richard Merrill, H.E.W., Peter Schaumber, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND OPINION

AUBREY E. ROBINSON, Jr., District Judge.

By this action Plaintiff American Frozen Food Institute (AFFI) challenges the innovative attempt by the Food and Drug Administration (FDA) to regulate labeling in certain areas of the food industry through establishing "common and usual names" for nonstandardized foods. AFFI contends that two recent rulings from FDA which establish common and usual names for seafood cocktails and frozen heat and serve dinners must be set aside by this Court on the grounds that they were promulgated in a manner excessive of agency authority, establish an unlawful presumption, violate the First Amendment and are arbitrary and capricious without sufficient support in the record. Reduced to its bare essentials, this case presents important questions concerning the scope of FDA authority under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq. (the Act) to regulate the food industry. For reasons explained below, the Court concludes that the FDA acted within its statutory authority and that the defendants are entitled to summary judgment.

The terms of art which are known in the food industry and to which the Court refers throughout this discussion are derived from the Act. A brief overview of the statutory scheme is thus helpful to an understanding of Plaintiff's threshold and most perplexing argument regarding the scope of FDA authority. Section 401 of the Act[1] gives the FDA authority to establish "definitions and standards of identity" for foods. Regulations establishing these standards are promulgated through a "rulemaking on the record" procedure as set forth in Section 701(e)(1) of the Act.[2] The regulation which results from this procedure is, in essence, a "recipe" for the standardized food; it defines the composition of a food, prescribes mandatory as well as optional ingredients and establishes amounts or relative proportions of ingredients.

The status of a food as standardized or nonstandardized also effects certain labeling requirements. If a food is standardized, Section 403(g) of the Act[3] requires that its label bear the name specified in the definition and standard of identity. If the food is nonstandardized, its label must bear the name of its "common or usual name, if any there be." Section 403(i).[4] Presumably, if a food is neither standardized nor one for which a common and usual name is known, it may bear any name its manufacturer wishes, providing it does not violate any provision of the Act. Only optional ingredients are listed on a label of a standardized food whereas all ingredients must be set forth on the label of a nonstandardized food.[5]

The regulations challenged by this action deal with nonstandardized foods. FDA has established common and usual names for certain of these foods under its general rulemaking authority, Section 701(a) of the Act.[6] The regulations were prompted by a concern expressed by the White House Conference of Food Nutrition and Health, regarding the lack of informative food labeling. In the Federal Register for June 22, 1972, the FDA Commissioner proposed the procedure which is challenged herein. In the proposal the Commissioner agreed with the Conference recommendation that uniform common and usual names should be established which would "accurately reflect the reasonable expectations of consumers."

1. 21 U.S.C. § 341.

2. 21 U.S.C. § 371(e)(1).

3. 21 U.S.C. § 343(g).

4. 21 U.S.C. § 343(i)(1).

5. 21 U.S.C. §§ 341, 343(i)(2).

6. 21 U.S.C. § 371(a).

In addition, the Commissioner indicated his intention to adopt the recommendation of the Conference to require disclosure on the label of the amount of characterizing ingredient where such was relevant to value of the product.[7] The obvious objective was to provide to consumers sufficient information on the labels of food products so that reasoned and informed shopping decisions could be made.

The general regulation which resulted provided:

(a) The common or usual name of a food, which may be a coined term, shall accurately identify or describe in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients. The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed with the same name. 21 C.F.R. § 102.2.

Subsequently, the FDA established, *inter alia,* common and usual names for frozen heat and serve dinners and for seafood cocktails. These specific provisions are challenged by this action and are set forth and discussed *infra.*

The Plaintiff contends that FDA lacks authority to *create* common and usual names through substantive rulemaking and is limited to only *recognizing* already established common and usual names in the course of a Section 701 proceeding establishing a definition and standard of identity. In the alternative, AFFI contends that even if FDA has authority to establish common and usual names through its general rulemaking authority, these two specific regulations exceed that authority. Plaintiff challenges the common or usual name for frozen heat and serve dinners on the grounds that the name is actually a definition and standard because it includes a listing of components. And AFFI challenges the common and usual name for seafood cocktail on the grounds that this regulation requires disclosure of the percentage of the seafood ingredient or ingredients on the label. Plaintiff cites significant legislative history to support its contention that the seafood cocktail regulation as currently worded exceeds agency authority.

Although the briefs in this matter seem to weave rather randomly throughout this threshold point, the Court has crystallized the following three questions which require consideration for resolution of AFFI's initial contention challenging FDA's authority to promulgate these regulations pursuant to its general rulemaking authority:

First, whether FDA has authority to implement the Act by establishing common and usual names under its general rulemaking authority set forth in Section 701(a). Secondly, whether the common and usual name for frozen heat and serve dinners is actually a definition and standard of identity promulgated in a procedurally defective manner. Thirdly, whether the FDA has authority to establish percentage of ingredient labeling requirements as part of a common and usual name, as in the case of the seafood cocktail regulation challenged herein. The Court will deal with these questions *seriatim.*

The first inquiry presents the perplexing question concerning the scope of FDA authority under the general rulemaking provision of its governing statute. By establishing common and usual names for nonstandardized foods, FDA purports to be implementing Section 403(i) of the Act, set forth below, which requires that nonstandardized foods bear their common and usual names if such exist.[8]

---

7. 37 F.R. 12327.

8. 21 U.S.C. § 343
    A food shall be deemed to be misbranded—
    (a) If its labeling is false or misleading in any particular.
    (b) If it is offered for sale under the name of another food. . . .
    (i) . . . [If nonstandardized] . . . unless its label bears
    (1) the common or usual name of the food, if any there be . . .

Whether FDA has the authority to implement this section by rulemaking must be determined by examining "the scope of authority granted the agency in light of the statutory language and background." *National Petroleum Refiners Assoc. v. FTC*, 157 U.S.App.D.C. 83, 482 F.2d 672, at 674 (1973). Under the general rulemaking provision of the governing statute set forth at 21 U.S.C. § 371(a), FDA is authorized to "promulgate regulations for the efficient enforcement of [the Act]." Plaintiff contends that despite the broad mandate reflected by this provision, FDA is restricted to two methods for establishing common and usual names. AFFI's position is that FDA can either recognize an already established common and usual name in the context of a Section 701 proceeding (establishing a definition and standard of identity) or may bring a judicial action pursuant to the sanctions set forth in 21 U.S.C. §§ 331–334 for violations of the Act, during which the Court can recognize the common and usual names of a particular food. Plaintiff does not dispute the fact that regulations issued under Section 701(a) have the force and effect of law providing they are within statutory authority of the agency and are factually supported in the record.[9] Rather, AFFI firmly asserts that FDA lacks the requisite authority under the Act to create common and usual names under its general rulemaking powers.

■ The Court is not persuaded that the Act should be read so narrowly. Plaintiff's first argument ignores significant case law which by analogy supports the FDA's authority to proceed by substantive rulemaking in this case. The cases are legion in which Courts have recognized the preference of substantive rulemaking by an agency over the time consuming and often unfair process of case by case adjudication. *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 653, 93 S.Ct. 2488, 2494, 37 L.Ed.2d 235, 241–242 (1973); *Permian Basin Area Rate Cases*, 390 U.S. 747, 780, 88

S.Ct. 1344, 1366, 20 L.Ed.2d 312, 343 (1968); *Federal Power Comm's v. Texaco*, 377 U.S. 33, 44, 84 S.Ct. 1105, 1112, 12 L.Ed.2d 112, 119 (1964); *National Petroleum Refiners Ass'n v. FTC*, 157 U.S.App.D.C. 83, 482 F.2d 672, 680 (173); *National Indus. Traffic League v. U. S.*, 396 F.Supp. 456, 459 (D.D. C.1975). The Court finds the reasoning of these cases persuasive in the present context. In addition, to construe the governing statute as not permitting implementation of a substantive section by rulemaking would constitute the "crabbed, inhospitable construction of a broad rulemaking authority" condemned in *National Petroleum Refiners, supra.*

In *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688 (2nd Cir. 1975) the Court was presented with an argument which was significantly similar to the one presently before the Court albeit in a slightly different context. Plaintiff therein contended that FDA lacked authority under its general rulemaking authority to establish regulations having the binding effect of law, except those regulations issued under the adjudicatory hearing procedure provided by Section 701(e) of the Act.[10] After careful analysis, the Court concluded that the elaborate procedures of Section 701(e) were additional to and not in derogation of the general rulemaking power granted the agency. The Court also recognized the judicial decisions which had encouraged agencys to broadly interpret their rulemaking powers and the propriety of the rulemaking procedure where the objective was essentially legislative, and concluded that FDA's rulemaking grant authorized enforcement of substantive provisions of the Act by regulation. The Court finds the reasoning to be similarly persuasive in this context where the agency is again addressing itself to broad questions of interest to both the public and industry.

■ Plaintiff's contention that common and usual names can only be established in the context of a Section 401 proceeding also

---

**9.** *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973).

**10.** 21 U.S.C. § 371(e).

reflects a basic misunderstanding of the purpose of these regulations presently before the Court. The legislative history of Section 401 indicates that it was enacted to provide FDA authority to establish definitions and standards of identity which were necessary to prevent economic adulteration of foods, a significant problem at the time.[11] The legislative history of this provision was examined and this purpose recognized by the Court in *Federal Security Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 230, 63 S.Ct. 589, 596, 87 L.Ed. 724, 731 (1943).

By the action challenged herein, FDA is attempting to provide consumers with relevant buying information on food labels of nonstandardized products. It is not attempting to eradicate economic adulteration nor to prescribe food composition. As stated earlier, the label of a standardized food bears only optional ingredients. The nonstandardized foods for which FDA has established common and usual names by the procedure challenged herein will bear on the label such information deemed appropriate by the agency in light of the purpose of the Act.

■ Although there is nothing in the legislative history which clearly indicates that FDA has the authority to provide this consumer information pursuant to its rulemaking authority by establishing common and usual names, there is nothing in the legislative history of Section 701(a) or (e) which indicates that it cannot. FDA purports to be implementing Section 403(i) by these regulations. This section, set forth in footnote 8, requires that a nonstandardized food bear the common or usual name on its label and its purpose was recognized at the time this legislation was adopted as "essential if the consumer is to obtain reasonable information regarding the composition of the foods he buys." [12] Therefore, based upon the above considerations, the Court concludes that FDA has the authority to implement Section 403(i) of the Act through its general rulemaking powers.

■ Next the Court must determine whether the two specific regulations challenged by this action have additional infirmities requiring this Court to set them aside. The thrust of Plaintiff's attack directed at the common and usual name for frozen heat and serve dinners is that this regulation, set forth below,[13] is actually a definition and standard of identity because it includes components as part of the name. Plaintiff contends that it must be set aside because it was not promulgated pursuant to a Section 701(e) proceeding required for any definition and standard of identity.

Although the Court recognizes that this name appears to be more than just a name, Plaintiff's argument that it is a definition and standard of identity is not persuasive. This regulation controls use of the term "dinner" and requires an accurate description of each component in order of descending predominance. As the regulation makes clear, all the specific ingredients are optional. Only categories are mandatory.

---

11. The Report stated: "One great weakness in the present food and drug law is the absence of authoritative definitions and standards of identity . . . . The Government repeatedly has had difficulty in holding such articles as commercial jams and preserves and many other foods to the time-honored standards employed by housewives and reputable manufacturers. The housewife makes preserves by using equal parts of fruit and sugar. The fruit is the expensive ingredient, and there has been a tendency on the part of some manufacturers to use less and less fruit and more and more sugar . . . By authorizing the establishment of definitions and standards of identity this bill meets the demands of legitimate industry and will effectively prevent the chiseling operations of the small minority of manufacturers . . . ."

H.R.Rep.No.2139, 75th Cong. 3rd Sess. (1938); Dunn, C., Federal Food, Drug, and Cosmetic Act, p. 819 (1938). (hereinafter Dunn).

12. S.Rep. 361, 74th Cong., 1st Sess.; Dunn at 247.

13. (a) A frozen "heat and serve" dinner:
   (1) Shall contain at least three components, one of which shall be a significant source of protein and each of which shall consist of one or more of the following: meat, poultry, fish, cheese, eggs, vegetables, fruit, potatoes, rice or other cereal based products (other than bread or rolls).
   (2) May also contain other servings of food (e. g., soup, bread or rolls, beverage, dessert). 21 C.F.R. § 102.1(a).

Therefore, to require a definition and standard of identity, which normally sets forth a "recipe" for a food, would be inappropriate since there *are* no specific mandatory ingredients for frozen heat and serve dinners. Therefore, it cannot be said that this particular regulation is actually a definition and standard of identity.

■ Lastly, Plaintiff challenges that portion of the regulation for seafood cocktail, set forth below,[14] which requires that the percentage of seafood ingredients be plainly stated on the label. Plaintiff argues strongly that FDA's authority to enforce such percentage of ingredient labeling requirements was specifically deleted from the statute when originally enacted. However, the Court is influenced by the subsequent inclusion of Section 201(n)[15] which authorizes the Commissioner to consider "the extent to which the labeling fails to reveal facts material in the light of such representations" in determining whether a label is false or misleading.

FDA's reasoning for the general principle of requiring disclosure of the percentage of characterizing ingredients for certain foods is that such information may be a "material fact" which must be disclosed to prevent a food label from being misleading. The regulations require that the amount of characterizing ingredient must be disclosed where

the proportion of such ingredient . . has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such

ingredient . . . is present in an amount greater than is actually the case.[16]

The Court also notes that the record support for this regulation indicates the materiality of the percentage of characterizing ingredient in this particular product. Virtually all of the consumer response heartily supported the general principle proposed, and several consumers indicated express approval of disclosure of percentage of ingredients for seafood cocktails as a necessary device for comparative food shopping.[17] In light of the materiality of the information required to be disclosed by this regulation, the Court is not persuaded that the Commissioner has exceeded his statutory authority in requiring that the label of seafood cocktail reveal the percentage of seafood ingredients therein.

Having determined that the Commission has not acted beyond its statutory authority in promulgating these regulations, the Court need only consider whether the regulations establish an unlawful presumption, violate the First Amendment of the Constitution and are supported by sufficient record evidence. All three contentions can be dealt with rather briefly.

■ Plaintiff contends that the regulations are unconstitutional because they establish an unlawful conclusive presumption that products with labels failing to conform are deemed to be misbranded. Without fully explaining this contention, Plaintiff cites several Supreme Court cases for support.[18] After reviewing these and other

---

**14.** Seafood Cocktails.

The common or usual name of a seafood cocktail in package form fabricated with one or more seafood ingredients shall be:

(a) When the cocktail contains only one seafood ingredient, the name of the seafood ingredient followed by the word "cocktail" (e. g., shrimp cocktail, crabmeat cocktail) and a statement of the percentage by weight of that seafood ingredient in the product in the manner set forth in § 102.1(b).

(b) When the cocktail contains more than one seafood ingredient, the term "seafood cocktail" and a statement of the percentage by weight of each seafood ingredient in the

product in the manner set forth in § 102.1(b). 21 C.F.R. § 102.5.

**15.** 21 U.S.C. § 321(n).

**16.** 21 C.F.R. § 102.1(b). See generally, Merrill and Collier, Like Mother Used to Make: An analysis of FDA Foods Standards of Identity, 74 Colum.L.Rev. 561 (1974).

**17.** Def. Ex. 1, p. 29, 53, 102.

**18.** *Cleveland Bd. of Ed. v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed. 52 (1974); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d

cases in the area of conclusive presumption, the Court fails to see the applicability of that doctrine to the facts at hand. *See, Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249, 44 U.S.L.W. 4295 (March 3, 1976); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 376, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318, 333 (1972); *See also* 54 N.C.Law.Rev. 460, 465 (1976).

■ Similarly, the Court fails to find merit in Plaintiff's First Amendment argument. This contention is premised upon Plaintiff's misconception that the regulations challenged proscribe truthful nonmisleading labeling and advertising. These regulations constitute the conclusion by the Commissioner that labeling which fails to meet the requirements of the regulation is misleading or otherwise not in compliance with the Act. With that in mind, the Court does not find the regulations constitute a prior restraint in violation of the First Amendment.

■ The final point that must be addressed is whether the administrative record supports the common and usual names for frozen heat and serve dinners and seafood cocktails challenged herein. Plaintiff contends that the Court should set aside these regulations on the grounds that based upon the record, they are arbitrary, capricious and an abuse of discretion. 5 U.S.C. § 706(a).

Plaintiff has tediously dissected the entire record of the proceeding below in an attempt to convince the Court that there is insufficient evidence to support the conclusion reached. However, the scope of judicial review is a narrow one under these circumstances. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1972). With that standard in mind, the Court finds sufficient support in the record to uphold the action taken by the agency with regard to the two regulations challenged in this case.

551 (1972); *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932); *Schlesinger v.*

Based upon the foregoing, it is this 30th day of March, 1976,

ORDERED that Defendants' Motion for Summary Judgment be and hereby is GRANTED; and it is

FURTHER ORDERED that this action be and hereby is DISMISSED.

*Wisconsin,* 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926).