FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant, v RAYMOND T. HYER, JR., et al., Respondents.

Second Department, March 5, 1979

### APPEARANCES OF COUNSEL

*Taback & Hyams (Howard J. Herman* and *Ira L. Hyams* of counsel), for appellant.

*Berg & Duffy (James P. Duffy, III,* and *William Cornachio* of counsel), for respondents.

### OPINION OF THE COURT

MARGETT, J.

The instant case is one more of a series of lawsuits related to the October, 1974 insolvency of the Franklin National Bank.[1] The principal question raised on appeal is whether the

---

1. See, e.g., *Federal Deposit Ins. Corp. v Northwood Projects,* — AD2d —; *Federal Deposit Ins. Corp. v Salesmen Unlimited Agency Corp.,* 61 AD2d 1023; *Matter of Franklin Nat. Bank Securities Litigation,* 445 F Supp 723; *80 Pine Inc. v European Amer. Bank,* 424 F Supp 908; *Federal Deposit Ins. Corp. v C.R.R. Contr. Corp.,* NYLJ, May 18, 1976, p 11, col 6.

Federal Deposit Insurance Corporation (F.D.I.C.) is entitled to summary judgment in this action to collect on a note which was, by its terms, due and payable more than four years ago. Special Term denied the F.D.I.C.'s motion for summary jdugment. We hold that the motion should have been granted.

Following the demise of the Franklin National Bank in 1974, the F.D.I.C. was duly appointed receiver of that bank's assets by the Comptroller of the Currency. Certain of Franklin's assets were transferred by the F.D.I.C. to the European-American Bank and Trust and Company pursuant to court order (Matter of Franklin Nat. Bank, 381 F Supp 1390). The F.D.I.C., as receiver, sold to itself in its corporate capacity all the remaining assets of the Franklin National Bank (see Matter of Franklin Nat. Bank Securities Litigation, 445 F Supp 723). Among those "remaining assets" were the note sued upon at bar, and guarantees of that note executed by the individual defendants.

The said note, dated October 15, 1974, was made by the defendant partnership. It is in the amount of $90,000, with interest thereon discounted at the rate of 8½% per annum. The note provides that after maturity, whether by acceleration or otherwise, interest shall be payable upon demand at a rate 3% per annum in excess of the interest or discount rate in effect at maturity. The note further provides that if it is referred to an attorney for collection, there shall be due and payable attorneys' fees of 15% of all sums due on the note. The note was due on November 15, 1974.

The defendant partnership's indebtedness to the Franklin National Bank was unconditionally guaranteed by the individual defendants per documents executed July 15, 1974. Defendants' answer admits that the individual defendants guaranteed payment of the partnership's obligations to Franklin. The guarantees provide, inter alia, that "[n]o executory agreement unless in writing and signed by Bank, and no course of dealing between Guarantor and Bank shall be effective to change or modify or to discharge in whole or in part this guarantee."

The instant action was commenced in December, 1977.[2]

---

2. One of the defendants, Louis G. Chapas, was served separately in March, 1978. It appears that he was no longer a member of the partnership at the time this action was commenced. The seventh affirmative defense pleaded in the answer alleges that he was not a partner "at any time mentioned in the complaint". However, the record reveals that Chapas is listed as a partner on the most recent business certificate for

After alleging the facts set forth above, the complaint recites that the F.D.I.C. has demanded payment of all principal and interest due on the note. It is alleged that only $20,918.82 of the $90,000 principal indebtedness has been repaid; that defendants therefore owe $69,081.18, plus accrued interest computed to December 15, 1977 of $792.86; that defendants further owe interest on the aforesaid principal sum of $69,081.18 at the rate of 11½% per annum from December 15, 1977, plus attorneys' fees of more than $10,000.

The answer contains a number of affirmative defenses which chiefly allege, in one form or another, the existence of an agreement with the F.D.I.C. whereby defendants would discharge their obligation through "monthly installments of principal and interest of *approximately* $1,000 per month (with the amount of the monthly installment to be subject to review from time to time *if* Hyer was reasonably able to increase the amount of the monthly payment) *until the obligation was discharged in full*" (emphasis supplied). The answer recites that defendant Hyer relied upon this agreement, arranged his financial affairs accordingly, and that the F.D.I.C. should be estopped from asserting its claim for the full amount of the indebtedness.[3]

Following the joinder of issue, the opening gambits in this litigation consisted of the attempted use of various discovery techniques by the parties. Motions and cross motions for protective relief resulted and the net effect was an order by Special Term (LEVITT, J.), dated May 9, 1978, which (a) vacated defendants' interrogatories without prejudice to service

partners of Raymond T. Hyer & Co. on file in the Nassau County Clerk's office. Furthermore, it was alleged by plaintiff in its motion for summary judgment, that (a) the files of Franklin National Bank contain a Dun & Bradstreet report, dated August 10, 1972, indicating that Chapas was a partner at that time, and (b) nothing appears in Franklin's files to indicate that Franklin was ever informed that Chapas had withdrawn from the partnership. Defendants' papers in opposition to the motion contain no reference to either the aforesaid business certificate for partners or the allegations by plaintiff. Accordingly, the seventh affirmative defense should have been stricken.

3. While a number of other defenses are raised in the answer, the papers in support of plaintiff's motion effectively demonstrate the invalidity of these defenses. Defendants' opposition papers are either silent with respect to plaintiff's attack on these defenses, or fail to establish that questions of fact exist as to these defenses. With the one exception of reasonable attorneys' fees, the body of this opinion concerns itself solely with defendants' principal defense, to wit, the existence of an agreement that the F.D.I.C. will accept payments of "approximately" $1,000 per month until the debt is liquidated.

of a proper set of interrogatories, (b) vacated both parties' notices seeking discovery or production of records, and required instead that each party produce upon examination before trial " 'such relevant books and records as [shall] enable the witness to be properly deposed' ", and (c) scheduled oral examinations of plaintiff, the defendant partnership, and the individual defendant guarantors, in that order.

Before any of this anticipated discovery transpired, however, plaintiff moved for, *inter alia,* summary judgment. W. Norman Davis, Associate Liquidator for the F.D.I.C., in an affidavit based upon both his personal knowledge and upon the books and records of the F.D.I.C. and the Franklin National Bank, denied the existence of any agreement whereby the F.D.I.C. would accept payments of $1,000 per month for an indefinite period of time.

In rebuttal, defendants furnished the court with copies of various correspondence between, or on behalf of, defendant Raymond T. Hyer and the F.D.I.C. during the period April 16, 1975 through December 19, 1977. This correspondence, together with further relevant documentation annexed to a reply affidavit, discloses the following sequence of dealings between these parties.

A letter dated April 16, 1975 from Mr. Davis, of the F.D.I.C., to Mr. Hyer confirms an April 8, 1975 discussion between Mr. Hyer and an F.D.I.C. representative. The letter states that the F.D.I.C. "will accept a repayment program on your obligation of $5,000, plus interest to April 30, of $3,346.09, and $1,000 per month thereafter to be applied to interest first, and then to principal. *This program is to be reviewed in six months. Furthermore, it is our understanding that you will attempt to refinance this loan as soon as possible"* (emphasis supplied).

Mr. Hyer acknowledged the provision for a "six month review" in a letter dated April 21, 1975, and further stated that he was "seeking additional finance to repay this loan". By letter dated August 5, 1975, Mr. Davis of the F.D.I.C. again wrote Mr. Hyer that "[w]e still anticipate * * * you will attempt to refinance this obligation elsewhere, and plan to review your repayment schedule with you sometime in October if refinancing is not completed by then."

The only October, 1975 correspondence contained in the record is an October 6 letter from Mr. Davis to Mr. Hyer, reminding him that the $1,000 payments had not been received for September and October, and asking him to remit

those payments immediately. The letter reiterates that the F.D.I.C. "plan[s] to review [Hyer's] account during the month of October" and asks Mr. Hyer to contact a specified F.D.I.C. representative.

No further correspondence appears in the record until June 8, 1976. In a letter so dated, Mr. Davis states that defendants' "monthly loan payments have been irregular." It is requested that Mr. Hyer remit a check for $6,000 so that his account can be brought up to date.

"Thereafter, beginning in July, 1976, your payments will be $1,000.00 per month, to be applied to principal and interest. For the present, the interest rate will continue at 8½%.

"Mr. Hyer, we again encourage you to refinance this debt elsewhere, if at all possible. As you know, the Federal Deposit Insurance Corporation is not a lending institution and your banking needs would be better serviced by a bank in your immediate area. *If the loan cannot be refinanced at present, we request that you send us your company's financial statement, as well as your own personal financial statement. This will enable us to structure a more suitable repayment program, which will repay the debt in full by October, 1977"* (emphasis supplied).

No refinancing was forthcoming, however, and it is obvious that the parties could not agree on a "more suitable repayment program".

A letter dated November 4, 1977 requests certain specified financial information (e.g., Federal tax returns and written rejections from bank officers, turning down refinancing of the obligation), plus a "[p]roposal specifying entire repayment schedule of [the] obligation, including dates and origination of funds" so that the F.D.I.C. can evaluate the situation "to determine whether a short term repayment schedule should be established." By letter dated December 2, 1977, the F.D.I.C. made a formal demand for payment in full by December 15, 1977. The letter recites that on June 8, 1976 it was agreed that the debt would be paid in full by October 31, 1977. "That payment was not received and when the borrower was asked to submit particular financial documentation, he refused. We believe that our office has exhausted every effort in order to cooperate with the borrower."

All letters subsequent to the December 2, 1977 demand consist of exchanges by or between counsel which reflect little

more than that the parties' positions had hardened into a litigatory stance.

As a threshold issue, it must be decided whether plaintiff's motion for summary judgment was premature. Special Term's order denying plaintiff's motion was not based upon a finding that there were trial issues of fact, but rather upon the belief that an adjudication of the motion prior to the completion of discovery "would be a negation of the May 9, 1978 order" of Mr. Justice LEVITT.

■ Special Term's ruling that the motion was premature was erroneous. "Service of a notice of motion [seeking summary judgment] stays disclosure until determination of the motion unless the court orders otherwise" (CPLR 3214, subd [b]). "If when a motion is made [for summary judgment] there is outstanding any obligation to disclose, whether pursuant to a mere notice or a court order, the mere making of the motion stays the disclosure * * * The stay of disclosure is automatic" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3214:2, p 856).

The court *may,* of course, direct otherwise but, contrary to the view expressed by Special Term, an adjudication of the motion for summary judgment would not have constituted a negation of the order directing discovery since the prior order would automatically have been stayed. Furthermore, on this record it would have been an improvident exercise of discretion to nullify the self-executing stay. Contrary to the position taken on appeal by defendants, this is not a case where discovery was necessary because facts needed to oppose the motion were unavailable to them (see CPLR 3212, subd [f]; see, also, 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.18). If the alleged extension "agreement" pleaded by defendants had ever been reduced to a writing signed by plaintiff's representative, defendants would surely have evidence of such an agreement, either in the form of an agreement as such, or in the form of correspondence received from plaintiff. Absent written documentation, defendants' claim of a superseding agreement must fall as a matter of law because of a complete lack of consideration for any such extension of time.

■ The "agreement" alleged by defendants, that plaintiff would accept monthly installments of "approximately" $1,000 per month "until the obligation was discharged in full", has all the earmarks of an executory accord. Subdivision 1 of section 15-501 of the General Obligations Law defines "execu-

tory accord" as "an agreement embodying a promise * * * to accept at some *future time* a stipulated performance in satisfaction or discharge * * * of any present claim * * * and a promise * * * to render such performance in satisfaction or in discharge of such claim" (emphasis supplied). However, subdivision 2 of that section requires that where the "satisfaction or discharge of the claim" is "to occur at a time after the making of the accord," the "promise of the party against whom it is sought to enforce the accord" must be *"in writing and signed by such party or by his agent"* (emphasis supplied).

Clearly, defendants have failed to produce any writing, signed by representatives of the F.D.I.C., which agrees to permit defendants to pay off the note at $1,000 per month for an indefinite period of time. The correspondence in this record actually belies the existence of any such agreement. All of the 1975 correspondence from the F.D.I.C. to Hyer indicated that the $1,000 per month repayment schedule was a temporary accommodation which would be "reviewed" by the F.D.I.C. in October of that year. Of the three 1975 letters from the F.D.I.C. to Hyer, described heretofore, two express an understanding that Hyer is to refinance the obligation in the very near future. The letter dated August 5, 1975 even states that the repayment schedule will be reviewed in October "if refinancing is not completed by then."

None of the subsequent correspondence contains anything to the contrary. The June 8, 1976 letter contemplates complete repayment of the debt by October, 1977. Refinancing is again mentioned in that letter, but plaintiff's budding exasperation appears in a seemingly inane statement that interest will continue at 8½% *"[f]or the present"* (emphasis supplied). None of the 1977 correspondence so much as hints that plaintiff is satisfied to accept $1,000 per month ad infinitum.

■ Apparently recognizing the futility of attempting to defend on the basis of a written agreement, defendants argue that they had concluded a superseding agreement—a novation —rather than an executory accord. Such a superseding agreement could, under some circumstances, be oral, and proof thereof wold not be precluded by the parol evidence rule (see *Miles v Houghtaling,* 32 AD2d 714).

Defendants' argument fails, however, because a superseding agreement would necessarily have to be supported by sufficient consideration (15 Williston, Contracts [3d ed], § 1872). It is well settled that in order to be valid, an oral agreement

modifying the time of payment of the original note must be supported by sufficient consideration (*National Citizens' Bank of City of N. Y. v Toplitz,* 178 NY 464, 467; *Parmelee v Thompson,* 45 NY 58; *National Commercial Bank & Trust Co. v Bart Boat Co.,* 41 AD2d 159). Part payment on a note which is due does not fulfill this requirement (*Parmelee v Thompson, supra; National Commercial Bank & Trust Co. v Bart Boat Co., supra),* since neither a promise to do that which the promisor is already legally bound to do, nor the performance of an existing legal obligation, constitutes a valid consideration for an agreement (*Haggerty Lbr. & Mill Work v Thompson-Starrett Constr. Co.,* 22 AD2d 509; *Melnick v Kukla,* 228 App Div 321). The obligation sued upon at bar was due on November 15, 1974 and there is no suggestion by defendants that the alleged extension agreement was entered into prior to that time[4] (see *National Commercial Bank & Trust Co. v Bart Boat Co., supra*).

In their brief, defendants contend that the consideration for the "new agreement" was "additional interest," payable by reason of the fact that "interest continued to accrue on [their] debt to [the F.D.I.C.]".[5] In effect, defendants would have this court believe that their payment of interest (at 8½%) over a longer period of time than that contemplated when the obligation was incurred constitutes consideration. Not surprisingly, defendants are apparently the first ones in more than 100 years to urge such an argument. So far as our research was able to determine, the argument was last tried, and rejected, in 1862 (*Kellogg v Olmsted,* 25 NY 189). In light of prevailing interest rates, with mortgages carrying over 9% interest and a prime rate of over 11%, it is absurd to argue that the indefinite payment of 8½% on an unsecured loan constitutes consideration.

We would note that although the answer also sets up a defense of estoppel, defendants' papers in opposition to the motion for summary judgment are bereft of any evidentiary support for this defense (cf. *Rose v Spa Realty Assoc.,* 42 NY2d

4. On the contrary, the answer alleges that the "agreement" was entered into "[i]n or about April 1975 and thereafter".

5. A review of all the papers before this court discloses that this is the first time consideration has been mentioned by defendants. In asserting a superseding agreement as a defense, it was incumbent upon defendants to plead a valid consideration for the said agreement (see *National Citizens' Bank of City of N. Y. v Toplitz,* 178 NY 464, 468).

338). In fact, the affidavit of defendant Raymond T. Hyer, submitted in opposition to the motion, is silent on this point. On this motion for summary judgment, it was incumbent upon defendants to come forward with proof of evidentiary facts showing the existence of a genuine issue (see *Federal Deposit Ins. Corp. v Salesmen Unlimited Agency Corp.,* 61 AD2d 1023; *Orens v Pel's Food,* 54 AD2d 691).

Accordingly, we hold that summary judgment should have been granted to plaintiff against all defendants with respect to (a) the principal indebtedness still outstanding, (b) interest accrued prior to December 15, 1977 at the rate of 8½% per annum, and (c) interest accrued since December 15, 1977 at the rate of 11½% per annum. We remand for a computation of these amounts. Upon remand there should be a hearing to determine whether the provision in the note for attorneys' fees of 15% of all sums due on the note, is reasonable (see *Chemical Bank v Battaglia,* 63 AD2d 689; *Long Is. Trust Co. v Jones,* 56 AD2d 838), and if found to be unreasonable, a determination and award of such fees as are reasonable.

DAMIANI, J. P., TITONE and SHAPIRO, JJ., concur.

Order of the Supreme Court, Nassau County, dated August 16, 1978, reversed insofar as appealed from, on the law, with $50 costs and disbursements, motion granted, cross motion denied, and action remitted to Special Term for further proceedings consistent herewith.