**REPUBLIC NATIONAL BANK OF NEW YORK, Plaintiff,**

v.

**Habib SABET, Hormoz Sabet and Firooz Corporation, Defendants.**

**79 Civ. 4290 (WCC).**

United States District Court,
S. D. New York.

July 18, 1980.
As Amended April 6, 1981.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for plaintiff; Adam Walinsky, Thomas J. Lennon, New York City, of counsel.

Coudert Brothers, New York City, for Hormoz Sabet; Mark D. LeBow, J. L. Siegel, J. D. Pope, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This removed action is presently before the Court on plaintiff's motion for summary judgment in lieu of a complaint.

*Background*

This is an action on a promissory note (the "note") in the principal amount of $1,500,000 executed by defendant Hormoz Sabet in his capacity as president of defendant Firooz Corporation ("Firooz"), at that time an Iranian private joint stock company; and on an unconditional personal guarantee (the "guarantee") of Firooz's obligations under that note executed by Hormoz Sabet and defendant Habib Sabet, Hormoz's father.[1] The note and guarantee were executed at a closing in New York on April 25, 1977, in connection with a loan in the amount of the note made to Firooz at that time by plaintiff Republic National Bank of New York ("Republic").

Documents presented to Republic at the time of the closing indicate that the note as executed was a binding obligation of Firooz: those documents certify that the Firooz Board of Directors had approved the obtaining of a loan in this amount from Republic and had authorized Hormoz Sabet "to negotiate with the Bank all the Terms and Conditions necessary for the

---

1. At least as of December 1976, both Habib and Hormoz Sabet were also members of the Firooz Board of Directors.

Company to obtain the Loan from the Bank and to sign any contracts, agreements, promissory notes or other ... instruments with or in favor of the Bank, necessary to obtain the Loan,"

and indicate that this Board resolution had been duly adopted and was in full force and effect on the date of the closing. In addition, Hormoz Sabet further signed a certificate stating in relevant part that "[t]he execution, delivery and performance by [Firooz] of the Note ... have been duly authorized by all necessary corporate action," and that "[t]he Note [constitutes] a legal and binding obligation of [Firooz] enforceable against the Company in accordance with its terms."

The note provides in relevant part that Firooz will pay the principal sum of $1,500,-000 to Republic, due on March 29, 1979, will pay interest on that amount of principal remaining unpaid before the due date on the first of the month at an annual rate of 9%, and will pay interest at an annual rate of 12% on any amount of principal not paid when due, whether due at stated maturity or by acceleration or as a result of any breach of the maker's covenants. Paragraph 6 of the note states:

"This note shall be deemed to have been made under, and shall in all respects be governed by, the laws of the State of New York."

The guarantee signed by Hormoz and Habib Sabet states:

"FOR VALUE RECEIVED, and in consideration of the loan ... made and resulting in the indebtedness evidence by the [note] ... the undersigned, jointly and severally, hereby unconditionally guarantee to REPUBLIC ... that the unpaid principal of and interest on the Note will be promptly paid when due (whether at stated maturity, by acceleration or otherwise) and agree that the time for payment of the Note may be extended, performance of or compliance with any of the agreements of the maker contained in the Note may be extended or waived, the Note may be renewed all without affecting the liability of any of

the undersigned hereunder and without notice to any of the undersigned.

1. Each of the undersigned hereby agrees that the obligations of the undersigned hereunder shall be unconditional irrespective of the genuineness, validity, legality or enforceability of the Note or any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or guarantor and regardless of any rule, regulation, decree or order now or hereafter in effect in any jurisdiction purporting to affect in any manner any of the terms of the Note or the rights of the Bank or any subsequent holder ...

\*  \*  \*  \*  \*  \*

3. ... Each of the undersigned hereby waives presentment, protest, all notices ... with respect to the Note, acceptance of this Guaranty and all demands whatsoever, and agrees that this Guaranty, and the liability of each of the undersigned hereunder, shall be construed in accordance with and governed by the laws of the State of New York."

Firooz regularly made the monthly interest payments due under the note from April 1977 through May 1979. In the spring of 1979, the political and economic situation in Iran became somewhat unstable following the departure of the Shah and the establishment of the Islamic Provisionary Revolutionary Government. Plaintiff does not dispute Hormoz Sabet's statement that by June 1979, Firooz and the Zam Zam Bottling Company ("Zam Zam"), an Iranian corporation also previously controlled by the Sabets, and a corporate guarantor of the Firooz note, had been expropriated by the Islamic Provisionary Revolutionary Government. The parties disagree on certain other matters pertaining to developments over these months, but agree that the principal amount of the Firooz loan was not repaid on March 29, 1979, as provided in the note and that on June 27, 1979, Cyril Dwek, Executive Vice President of Republic, sent Habib Sabet a telegram as follows:

"KINDLY NOTE THAT THE THREE MONTHS EXTENSION WHICH WAS

EXCEPTIONALLY GRANTED TO YOU LAPSES ON JUNE 29, 1979.

"IN VIEW OF OUR OLD AND GOOD FRIENDSHIP AND IN ORDER TO AVOID ANY MISUNDERSTANDING OR EMBARASSMENT [sic] PLEASE BE IN TOUCH WITH MR. ALBERT BENEZRA AT TRADE DEVELOPMENT BANK GENEVA REGARDING THE REPAYMENT OF THIS LOAN."

The parties further agree that on July 5, 1979, Hormoz and Habib Sabet sent Republic a check for $300,000; that Republic accepted this as part payment of principal on the Firooz loan; and that on July 2, 1979, Hormoz and Habib Sabet tendered a check in the amount of $15,500, representing interest at 12% on the Firooz loan of $1,500,-000, and Republic accepted that check.

*Proceedings*

Subsequently, Republic brought this action in the Supreme Court of the State of New York, New York County, to recover the unpaid principal on the note, or $1,200,-000, plus interest at the post-due rate of 12% from July 1, 1979, by means of an *ex parte* attachment order issued pursuant to CPLR § 6201(1) and by service of a summons and notice of motion for summary judgment in lieu of a complaint pursuant to CPLR § 3212, which authorizes such a procedure in actions based upon an instrument for the payment of money only. In accordance with the attachment order, Republic directed the Sheriff of the City of New York to levy against the contents of Hormoz Sabet's apartment at 820 Fifth Avenue in New York, and the sheriff did so. Papers were served on defendant Hormoz Sabet on July 31, 1979, and on Gulf Associates, Inc., the agent specified for service of process on Firooz in Paragraph Four of the note, on August 6, 1979.

On August 15, 1979, defendant Hormoz Sabet filed a petition for removal of the case to the Southern District of New York on behalf of "all defendants served with process." The petition asserts that federal jurisdiction exists over the action based on diversity of citizenship, since Republic is a national banking association, with its principal place of business in New York, while Firooz is an Iranian corporation with its principal place of business in Teheran and each individual defendant is an Iranian citizen. Plaintiff did not oppose the petition, and the case was duly removed, with pending motions of Hormoz Sabet to vacate the attachment and of plaintiff to confirm it.

On September 6, 1979, the parties entered into an agreement settling the issues raised by the motions to vacate or confirm the attachment. The agreement provides that Hormoz Sabet retains the right to seek recovery from Republic for damages to or loss of any of the items removed from his apartment by the sheriff, or damage to the apartment resulting from the sheriff's seizure of such items.

On September 27, 1979, Habib Sabet was served with a summons and notice of motion in this case by a process server authorized under the laws of France, who left a copy of such papers with the doorkeeper at Habib Sabet's Paris residence and mailed a copy to him at that address. See affidavit of service signed at the United States Embassy on September 28, 1979.

*Contentions*

A. Hormoz Sabet

Hormoz Sabet, the only defendant to appear formally in this action, has raised several contentions in opposition to plaintiff's motion. First, he contends that an issue of material fact exists with respect to whether Republic extended the due date of the Firooz note until March 29, 1980. In support of his assertion that this extension was granted, Hormoz Sabet states that Habib Sabet arranged for such an extension orally with Cyril Dwek of Republic in March 1979, and points to his letter of March 13, 1979 to Dwek, which states, in relevant part,

"I refer you to your discussions with Mr. Habib Sabet in Paris, whereby you kindly confirmed your acceptance to extend for a period of one year the loan in the amount of $1,500,000 extended to the Firooz Corporation.

"Mr. Habib Sabet will be in New York in the near future and will be meeting with you to discuss this matter.

"Alternatively, I shall return to New York within the next two weeks after a trip, and shall look forward to seeing you at that time." Affidavit of Hormoz Sabet of October 12, 1979, Exh. 3.[2]

Secondly, Hormoz Sabet maintains that pursuant to an oral agreement entered into in Geneva, Switzerland, between Habib Sabet and Albert Benezra ("Benezra"), a director of Republic's affiliate, the Trade Development Bank of Geneva, following Dwek's telegram of June 27, 1979 demanding payment on the Firooz note, Republic agreed that, in return for the Sabet's immediate payment of $300,000 in principal on the note (which the Sabets assert was not yet due under Dwek's earlier extension), and for the Sabets' undertaking to assure interest payments on the extended Firooz loan, Republic would reaffirm Dwek's earlier grant of a one-year extension and would "endeavor to collect from the Firooz Corporation in Iran the full amount of the principal and interest due under the Note and to use a portion of the proceeds to repay to the Sabets the $300,000 which they personally were paying to Republic National Bank," as well as to collect from Zam Zam certain other monies due on a loan to Zam Zam and reimburse the Sabets for payments they had made to Republic under their personal guarantee of that Zam Zam obligation (the "Geneva agreement"). Since Republic has not attempted to collect either from Firooz or from Zam Zam, Hormoz Sabet alleges, Republic has breached the Geneva agreement with the Sabets and extinguished any duty the Sabets had to repay monies under the Firooz note.

In his Supplemental Affidavit of November 2, 1979, Hormoz Sabet also asserts that, apparently as a result of a meeting with Republic's Honorary Chairman Edmond Safra in July 1979, as further consideration for the one-year extension, he and Habib Sabet agreed to and did provide assistance to Republic in Republic's attempts to satisfy a $6 million loan previously made by Republic to the AKAM group of Iranian companies.

In connection with this defense, Hormoz Sabet requests discovery to ascertain whether any writings exist in Republic's or its affiliate's files relating either to the alleged March extension of the Firooz note due date or to the alleged Geneva agreement.

Thirdly, Hormoz Sabet asserts counterclaims against Republic for damages based on the bank's breach of the alleged Geneva agreement and for damage caused by the sheriff's execution of the attachment order against Hormoz Sabet, including damages due to loss of or injury to the personal property of Hormoz Sabet and his family and damages to the Sabet apartment as a result of the seizure, and injury flowing from the inconvenience and embarrassment suffered as a result of the seizure. Hormoz Sabet computes these total damages as in excess of $1,500,000, with damages from the sheriff's seizure alone estimated at over $100,000. Hormoz Sabet contends that the existence of these counterclaims alone precludes a grant of summary judgment on plaintiff's claims.

Fourthly, Hormoz Sabet asserts that in reliance upon the one-year extension allegedly agreed to by Republic in March 1979, he and Habib Sabet decided not to request extensions of other loan obligations which were to become due and owing, and made payments of principal and interest to Citibank, N.A. and Irving Trust Company "using monies which, but for the one-year extension agreed to by Republic, would not have been expended in this manner," to the Sabets' detriment, and that Republic is, accordingly, estopped from denying the validity of the loan extension.

Fifthly, Hormoz Sabet contends that Republic failed to comply with an oral promise allegedly made to Hormoz Sabet by Republic at the time of the April 25, 1977 closing to satisfy the formalities essential to a valid agreement under the corporate by-laws of

---

**2.** Hormoz Sabet further asserts that Republic consented to this extension by pointing to the failure of Edmond Safra, Republic's Honorary Chairman, to mention the loan to the Sabets at the wedding of Safra's daughter on June 17, 1979, which the Sabets attended.

Firooz by sending a copy of the note as executed by Hormoz back to Iran to obtain a second signature and the Firooz corporate seal. As a result, Hormoz Sabet asserts, the note is not binding on Firooz and the guarantee cannot therefore be enforced against the Sabets. Hormoz asserts, in addition, that Republic's failure to ensure the validity of the note destroyed any rights of subrogation the Sabets might have had against Firooz, since "[w]hile the Iranian government may well be willing to waive the note's technical defects for. Republic's sake and honor Republic's claims against Firooz Corporation, it will not do so with respect to any such claims of the Sabets." Affidavit of Hormoz Sabet of November 2, 1979. Accordingly, he claims, even if the guarantee would otherwise be binding on him even though the note was not binding on Firooz, this case is equivalent to one in which a creditor's destruction of a guarantor's right of subrogation under UCC § 3–606 discharges the guarantor from liability.

Finally, Hormoz Sabet asserts that Republic has set off Firooz's obligations under the note against the assets of other Iranian instrumentalities currently held frozen by Republic pursuant to President Carter's Executive Orders of November 14, 1979 and April 7, 1980 and 31 CFR §§ 535.504 and 535.418, so that any claims against Firooz have been satisfied and the Sabets' guarantee obligations have also been satisfied.

### B. Habib Sabet

The position of Habib Sabet in this litigation is not entirely clear. Habib Sabet was served with process in France on September 27, 1979. Hormoz Sabet's statement of material issues of fact dated October 15, 1979, filed pursuant to General Rule 9(g) of the Southern District of New York, asserts in paragraph 9 that "[t]he Court does not have jurisdiction over respondents Habib Sabet and Firooz Corporation, since neither has been properly served with process." On October 18, 1979, Habib Sabet filed an affidavit with the Court, sworn to at the American Embassy in Paris, which states that the

"facts set forth in the [October 12] affidavit of Hormoz Sabet are true, accurate and complete to the extent that they refer to matters within my knowledge"; this affidavit does not raise issues of service or of personal jurisdiction. On November 5, 1979, counsel forwarded the original of that affidavit to the Court without further indication that Habib Sabet intended to contest service or personal jurisdiction. Habib Sabet has filed no further pleadings or papers in this action.

### C. Firooz Corporation

Defendant Firooz has not appeared in this action.

### D. Republic

Plaintiff Republic agrees that this Court has diversity jurisdiction over this action, and asserts that the Court has personal jurisdiction as well over all of the named defendants. As to the several defendants' obligations under the note and guarantee, Republic contends that on or about March 29, 1979, the due date of the Firooz note, it agreed to a three-month extension, to June 29, 1979; that on June 27, 1979, in the Dwek telegram, it demanded payment on the note; that, as described above, the Sabets made certain principal and interest payments in July 1979, but have not fully covered their obligations under the guarantee; and that the balance of the principal plus monthly interest on that sum is due and owing.

In response to Hormoz Sabet's asserted defenses, plaintiff first states that none of its officers or personnel made any oral promise, either in March 1979 or at the June 1979 meeting in Geneva, to extend the due date of the Firooz note for a year, to attempt to collect the principal and interest due under the note from Firooz directly, or to attempt to collect amounts due under the Zam Zam note, also guaranteed by the Sabets, from Zam Zam. The supporting affidavit of Cyril Dwek, for instance, states that Dwek never agreed to the alleged extension in March and never agreed to collect outstanding loans from Firooz or Zam Zam, and that

"[o]n several occasions, including after Hormoz [Sabet's] March 13 letter ... I informed Habib and Hormoz ... that Republic would not even consider granting any extension other than a three month extension to June 29, 1979, unless Habib and Hormoz provided collateral for the loan ...."

Albert Benezra's affidavit indicates that he discussed an undertaking by Republic to "attempt to collect the loan which is the subject of this action from Firooz or to attempt to collect another loan from the Zam Zam Bottling Company," with Habib and Iraj (Hormoz's brother) Sabet in July 1979, but only if the Sabets provided satisfactory collateral for the Firooz loan, which the Sabets did not supply.

Raphael Husni, Vice President of Republic, states in his affidavit that he has examined the files in Republic's New York office "in which any documents relating to this loan or any extension of it would be likely to be filed, namely the loan file and credit department files regarding the Sabets and their corporations," and that the only document in those files relating to an extension of the Firooz loan or guarantee on any terms is the Dwek Telex message of June 27, 1979.

Next, plaintiff asserts that even if such an oral agreement was made, the agreement as alleged by Hormoz Sabet is not binding on plaintiff, since Hormoz Sabet has not alleged that he and his father gave any return promises or performed any acts which would constitute consideration for the alleged promises by plaintiff. Plaintiff states that, since the note was due in March, the Sabets' alleged promises in June and July to pay the principal and interest due on the note, even if confirmed by actual part payment, were merely promises to do what the Sabets were already obligated to do under the guarantee, and are insufficient consideration as a matter of law to make Republic's alleged promises enforceable. Plaintiff further argues that Hormoz Sabet's later allegations of a promise by the Sabets to assist Republic, in some unspecified manner, in collecting certain other, un-

related loans is too vague and unsubstantiated an allegation to state adequate consideration or support a denial of summary judgment. Plaintiff also argues that New York General Obligations Law § 5–1103, which provides that an agreement to modify an existing contract needs no consideration to be enforceable if the agreement to. modify is "in writing and signed by the party against whom it is sought to enforce the change, modification or discharge" is not applicable here, since no such written extension agreement or undertaking by Republic to attempt to collect from Firooz or Zam Zam exists. Thus, plaintiff argues, the alleged extension and alleged Geneva agreement are no defense to plaintiff's action.

Thirdly, plaintiff argues, the alleged extension and related Geneva agreements, lacking consideration or enforceability, do not create any cause of action for their alleged breach, and thus do not state counterclaims whose existence should preclude the granting of summary judgment, while Hormoz Sabet's claims for damages to his apartment, and other damages resulting from the seizure, are based on facts distinct and separable from the facts relating to plaintiff's motion for summary judgment on the note and guarantee, and should not affect the entry of summary judgment for plaintiff on the note and guarantee claims.

As to Hormoz Sabet's estoppel claim, plaintiff asserts that the Sabets' actions in paying off their other outstanding loans instead of seeking extensions on those loans is not "unequivocally referable" to the alleged promises by plaintiff; notes that Hormoz does not state in his allegations when those loans were due; and asserts that Republic's acceptance in July 1979 of a June interest payment on the loan, which the Sabets were required to make under the terms of their guarantee, should not estop Republic from enforcing the Sabets' obligations to pay the loan principal and to make further interest payments.

With respect to Hormoz Sabet's defense based on alleged noncompliance with the formalities required to make the note a

valid obligation under Iranian law, due to Republic's alleged breach of its alleged oral agreement, plaintiff states that such an allegation is one which no reasonable mind could credit, and would, in fact, if true, make Hormoz Sabet guilty of criminal fraud in procuring the loan, given Hormoz Sabet's execution at the closing of the certificates quoted above concerning the due authorization and execution of the note, Hormoz Sabet's signing, along with the other Firooz board members, of the resolution authorizing him to sign the note to obtain the loan, and the three opinions of counsel presented at the closing, including that of Iranian counsel to Firooz, that the note was the legal, valid and enforceable obligation of Firooz.

Finally, plaintiff responds that Republic's offset of Iranian government credit balances of approximately $10 million against its liens and other claims against those assets of over $17 million do not satisfy Firooz's obligations to Republic; and that Republic has no obligation under New York law to satisfy Hormoz Sabet's personal obligation to Republic out of blocked Iranian assets, and may in fact be barred from doing so by federal regulation, citing Executive Order 12205, April 7, 1980, 45 Fed. Reg. 24099.

*Discussion*

A. Plaintiff's claims against Hormoz Sabet

After reviewing the note, guarantee and related loan documents, and considering the various defenses to enforcement of the guarantee raised by Hormoz Sabet, the Court concludes that plaintiff's motion for summary judgment against this defendant should be granted.

1. Extension of the note's due date

■ Whether, as Hormoz Sabet claims, officers of Republic agreed to extend the due date of the note for one year, or whether, as plaintiff contends, its officers agreed to at most a three-month extension is immaterial to Republic's claim for repayment of the principal amount of the loan, since the due date under the alleged extension has already passed. Hormoz Sabet does not allege that, as part of any extension agreement, Republic ever agreed to accept interest payments at a rate lower than 12% for any period after July 1, 1979, so that the dispute over the duration of the alleged extension is similarly immaterial to plaintiff's claim for interest after that date.

2. Extension agreement; additional terms

There are four additional ways in which the alleged extension agreements—Dwek's alleged agreement of March 1979, and the alleged Geneva agreement of June 1979, as allegedly ratified by Safra in July 1979—could nullify the Sabets' unconditional guarantee to pay any principal and interest on the Firooz note remaining unpaid after the due date. First, the alleged extension agreements could be construed as a modification of the guarantee creating a condition precedent to the Sabets' obligation to pay Republic under the guarantee, namely, Republic's undertaking to collect $1,500,000 directly from Firooz and to repay to the Sabets their payment of $300,000 in principal on the Firooz note, as well as Republic's undertaking to collect $1,000,000 from Zam Zam in order to repay that sum to the Sabets. Republic's failure to satisfy this new condition precedent would then release the Sabets from any obligations under their guarantee. Second, the Geneva agreement could be viewed as a separate contract or novation of the earlier agreement between the Sabets and Republic which Republic breached, enabling the Sabets to claim damages which offset any amounts which the Sabets might owe to Republic under the April 25, 1977 guarantee. This interpretation is dependent on the Sabets' giving adequate consideration for the new agreement. Third, Republic might be estopped by the alleged actions of its agents in offering these new terms from now enforcing the guarantee against the Sabets. Finally, any enforceable extension agreement between Republic and Firooz might arguably discharge the Sabets' obligations as guarantors under New York UCC § 3–606.

### a. Modification

■ It does not appear that Hormoz Sabet can state a claim that the alleged extension agreements are enforceable modifications under Section 5–1103 of the New York General Obligations Law, which states that such a modification will be enforceable even in the absence of consideration providing the modification is in writing, signed by the party to be charged, *Kent v. Dale Factors Corp.*, 67 A.D.2d 848, 413 N.Y.S.2d 13 (1st Dept. 1979); *Paine-Erie v. Lincoln First Bank*, 82 Misc.2d 432, 370 N.Y.S.2d 370 (Sup.Ct. Monroe County 1975) (part payment not sufficient under this section), since Hormoz Sabet has offered no such writings.

■ While Hormoz Sabet asserts that he could offer such writings if he were granted discovery as to the contents of plaintiff's files in New York and Geneva, the affidavit of Raphael Husni submitted on behalf of plaintiff states that a search of those records of Republic where such correspondence or writings would be located—namely, the bank's files on the Sabets and their various companies—shows that no such writings exist. This defendant has not offered any additional support for his allegations that such documents exist in Republic's files. There thus appears to be no basis for granting Hormoz Sabet's discovery request, and the request is, accordingly, denied. See 6 Moore's Federal Practice ¶ 56.15.

### b. Separate agreement

■ Nor does Hormoz Sabet appear to have a defense based on a separate contract with Republic or on a modification supported by consideration. Even if Republic's officers are assumed to have made the promises which the Sabets allege were made to extend the note's due date and attempt to collect this loan from Firooz and the Zam Zam note from Zam Zam, Hormoz Sabet has not alleged that the Sabets made reciprocal undertakings which would, as a matter of law, constitute sufficient consideration for Republic's alleged promises. The alleged agreement by the Sabets in Geneva in June to pay principal and interest on the Firooz note appears to be no more than an agreement to do what the Sabets were already bound to do, since the note had fallen due in March and had not been paid by Firooz. There is no basis here on which the Court could assume that the March 29, 1979 due date of the note was effectively modified at any time prior to the alleged Geneva agreement: Hormoz Sabet does not allege that Habib Sabet gave Dwek any consideration for Dwek's alleged March agreement to extend the note's due date, and does not allege that the Sabets concluded an extension agreement binding on Republic on any other occasion prior to the Geneva meeting. Thus, the Sabets' obligations under the guarantee to pay principal and interest were in effect at the time of the alleged meetings with Benezra and Safra, and neither an agreement by the Sabets to make part payment of principal or interest, nor any actual part payment of principal or payment of interest due constitutes valid consideration for an additional agreement by the bank. *FDIC v. Hyer*, 66 A.D.2d 521, 413 N.Y.S.2d 939, 944 (2d Dept. 1979); *National Commercial Bank & Trust Company v. Bart Boat Company*, 41 A.D.2d 159, 341 N.Y.S.2d 347 (3d Dept. 1973); *Paine-Erie, supra.* On this basis, the defense is inadequate as a matter of law.

Nor do Hormoz Sabet's nonspecific allegations of "assistance" offered or given to Republic in connection with collection of the AKAM loans show that there is a triable issue of fact as to consideration. *Istituto Per Lo Sviluppo Economico Dell-Italia Meridionale v. Sperti Products*, 47 F.R.D. 310, 317 (S.D.N.Y.1969); *FDIC, supra*, 413 N.Y. S.2d at 944 (vague allegations of consideration insufficient to support claim).

### c. Estoppel

■ While the doctrine of estoppel may be used to override the policies of New York General Obligations Law § 5–1103, see *Philo Smith v. Uslife Corporation*, 554 F.2d 34 (2d Cir. 1977) (discussing use of doctrine to override New York General Obligations Law § 5–701(a)(10)), or the requirement of consideration to support a separate agree-

ment, see *FDIC, supra* (use of doctrine discussed where oral agreement to extend loan due date not supported by consideration), the doctrine requires a showing that the party asserting estoppel relied on the actions of the other party in a way which would make it inequitable to allow the other party to assert a defense based on the Statute of Frauds or lack of consideration, see *Philo Smith, supra*, 554 F.2d at 36; *The Savage is Loose Co. v. United Artists*, 413 F.Supp. 554, 559 (S.D.N.Y.1976); see generally Restatement of Contracts 2d, § 90. Here, even if Hormoz Sabet's allegations are presumed to be true, they do not appear sufficient to support a claim of detrimental reliance on Republic's actions. There is no basis for inferring that the alleged conduct of Hormoz Sabet and his father in refraining from paying other outstanding loans was attributable to Republic's alleged assurances as to an extension on the Firooz note, since the Sabets would presumably have been required in any event to repay those other loans when due. As to the Sabets' forbearance from seeking loan extensions, the Court notes that this allegation appears wholly speculative—Hormoz Sabet does not allege that any extensions had been *offered* by the various lenders—and that, even if such extensions had in fact been offered, foregoing such an opportunity might not constitute sufficient detriment to support an estoppel claim, see *Philo Smith, supra*, 554 F.2d at 36.

Moreover, even if Republic were deemed estopped by the alleged actions of its officers, such an estoppel would pertain only to the extension of time, not the alleged conditions precedent (Republic's alleged undertakings to collect from Firooz and Zam Zam): Hormoz Sabet does not allege that plaintiff took any action leading any defendant to rely on plaintiff's alleged promise that it would collect from those corporations, and there does not appear to be any factual basis from which to infer support for such a claim. The alleged estoppel does not, therefore, raise a defense to Republic's claim on the note and guarantee. See *Man-*

*ufacturers Hanover Trust Co. v. Trans National Communications, Inc.*, 36 A.D.2d 709, 319 N.Y.S.2d 510 (1st Dept. 1971), *aff'd*, 29 N.Y.2d 919, 329 N.Y.S.2d 98, 279 N.E.2d 855 (1972).

#### d. Discharge

■ Under UCC Section 3–606, if a creditor agrees to give a debtor an extension of time on an instrument guaranteed by a third party to the instrument without the consent of that guarantor, the guarantor's obligation is discharged. Although this section by its terms appears inapplicable in this instance since the Sabets are not, strictly speaking, parties to the negotiable instrument here (the note), the section might be interpreted to apply to any party in the position of a surety, see Official Comment to New York UCC § 3–606; *cf. Mikanis Trading Corp. v. Block*, 59 A.D.2d 689, 398 N.Y.S.2d 679 (1st Dept. 1977). Even if the section is applied, however, Hormoz Sabet cannot assert a defense based on this section for two reasons: first, the guarantors in this instance certainly consented to any modification, since the guarantee signed by the Sabets expressly waives such a defense and the Sabets allegedly arranged for the extension; and second, a creditor's agreement to extend time must be valid and binding on the creditor "to operate as a variation of the principal's obligation and thus serve to discharge one secondarily liable," *Stahl v. Rovins & West, Inc.*, 29 A.D.2d 280, 287 N.Y.S.2d 226 (1st Dept.), *aff'd*, 23 N.Y.2d 679, 295 N.Y.S.2d 930, 243 N.E.2d 149 (1968), and, as discussed above, no such agreement is enforceable against plaintiff here.

#### 3. Compliance with Iranian formalities

■ Whatever the Iranian law may be on the formalities required to create an obligation binding on Firooz,[3] Hormoz Sabet cannot, on this record, assert any failure by Republic to correct deficiencies in the execution of the Firooz note as a defense to

---

**3.** As per the choice of law provisions in the note and guarantee, the Court has applied principles of New York law in evaluating this and other defenses raised by the Sabets.

Republic's claim. The guarantee signed by the Sabets explicitly waives any defense based on the validity of the note under Iranian law. In addition, Hormoz Sabet is estopped from asserting such a defense by his own representations in the certificates he furnished to Republic that the note was a valid and binding obligation of Firooz.[4] Moreover, the alleged oral undertaking by Republic to comply with unfulfilled formal requirements under the Firooz bylaws again appears to be unsupported by consideration from the Sabets, and therefore is unenforceable as a matter of law. This in itself would preclude the application of the discharge principles of UCC § 3–606, see *Stahl, supra.* So also would the surrounding circumstances, since any modification to the note or guarantee resulting from the alleged agreement—which, according to Hormoz Sabet's own allegations, he suggested to Republic—could hardly be said to be without the Sabets' knowledge and consent, another factor negating discharge under Section 3–606. Even if Hormoz Sabet's allegations as to the formalities required to make the Firooz note binding and Republic's oral agreement to conclude such formalities are assumed to be true, therefore, these allegations would not constitute a defense to plaintiff's claims on the note and guarantee as a matter of law.

**4. Other Counterclaims**

■ Hormoz Sabet's remaining counterclaims for damages to his apartment and other damages flowing from the sheriff's seizure are based on an entirely different factual situation from that underlying plaintiff's claim for payment under the note and guarantee, and are readily severable. They do not form a basis for denial of summary judgment on plaintiff's claim. See *Spencer, White & Prentis v. Pfizer, Inc.,* 498 F.2d 358 (2d Cir. 1974); *cf. Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (final judgment on severed claims); *Chemical Bank v. Panayotopulos,* 54 A.D.2d 850,

388 N.Y.S.2d 287 (1st Dept. 1976) (severability under New York law—suit on promissory note).

**5. Satisfaction by Setoff**

■ It is apparent that, given the magnitude of the potential claims against the Iranian assets deposited with Republic and frozen by Presidential order, and the possibility that the United States Government will require use of those funds for purposes other than satisfaction of Republic's existing claims against Firooz and other expropriated Iranian corporations, see, *e. g.,* Wall St. J., July 8, 1980 at 30, col. 1–2, Republic's claims against Firooz or the guarantors of the Firooz note have not been satisfied by the bank's setoff of Iranian assets against its claims, including the Firooz obligations. In fact, as plaintiff points out, not only have the claims not yet been satisfied, but Executive Order 12205 of April 7, 1980, 45 Fed.Reg. 24099, ¶ 1–101(d)(iii) and (iv) may require Republic to proceed against the guarantor at this juncture. In addition, the Sabets waived, in their guarantee, any defense based on changes in applicable United States law, which presumably would include the assets freeze and the setoff. Finally, it is clear that under New York law, Republic has no obligation to proceed against Firooz assets before asserting its claims against the guarantors. See New York General Obligations Law § 15–701. Accordingly, Hormoz Sabet cannot assert the Iranian assets freeze and enforced setoff as a defense to this motion.

**B. Plaintiff's claims against Habib Sabet**

On this record, granting plaintiff's motion for summary judgment as to Habib Sabet also appears in order.

Because Habib Sabet, after being served with process in the case, submitted an affidavit which fails to raise issues of improper service and lack of personal jurisdiction, it appears that Habib Sabet may have waived

---

4. Firooz would also appear bound by these representations, as well as by those of its counsel in its opinion letter.

the right to assert those defenses to Republic's action against him.

■ If it is assumed, however, that Hormoz Sabet's raising of the service-of-process issue as to Habib Sabet in Hormoz's Local Rule 9(g) statement indicates that Habib Sabet intends to raise this defense, and is sufficient to put plaintiff on notice that such a defense is being raised, the defense would be without merit. Habib Sabet came to New York to sign the guarantee, made interest payments in New York, and conducted further business in New York relating to this loan and to his other interests, including those connected with Gulf Associates, Inc. of New York, Firooz's designated agent for service of process in New York, see letter of Hormoz Sabet of March 13, 1979, Exhibit B, Hormoz Sabet affidavit of October 12, 1979, during the term of the note. This appears sufficient to support a finding that Habib Sabet conducted business in New York under CPLR § 302. See generally *Plaza Realty Investors v. Guy B. Bailey, Jr., et ano*, 484 F.Supp. 335 (S.D.N.Y.1979). Habib Sabet was served by a method authorized by CPLR § 308(2), and, in accordance with CPLR § 313, by a process server authorized in France. Thus, service of process appears proper under Rules 4(e) and (f), F.R.Civ.P., and CPLR §§ 302, 308 and 313. *United States v. Montreal Trust Co.*, 35 F.R.D. 216 (S.D.N.Y.1964).

Under either assumption, it appears that Habib Sabet has had sufficient contacts with New York to satisfy the requirements of due process as to a finding that the Court has personal jurisdiction over this defendant, see *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Assuming also that Habib Sabet joins in those defenses raised by Hormoz Sabet, the Court finds those defenses insufficient for the reasons stated above. With respect to the issues raised by Hormoz Sabet's allegations of an oral agreement by Republic to comply with unsatisfied formalities in the execution of the note, the Court notes that Habib Sabet authorized Hormoz Sabet to act for Firooz in representing the corporation's interests to the bank, see Firooz Corporation Resolution of December 1976, Exhibit E, affidavit of Raphael Husni, and thus also appears estopped by Hormoz's certification that the required Firooz formalities had been satisfied.

## C. Plaintiff's claims against Firooz

■ Service on Firooz by service on its contractually designated agent for service of process, Gulf Associates, would normally be proper under F.R.Civ.P. 4(d)(7) and New York CPLR § 311(1). See *Sunrise Toyota v. Toyota Motor Co.*, 55 F.R.D. 519 (S.D.N.Y. 1972). In this instance, however, while the Islamic Provisionary Revolutionary Government of Iran has not, apparently, repudiated the note, it is unclear whether either the Iranian government or the new officers of the expropriated company have repudiated or intend to repudiate that portion of the note designating Gulf Associates as Firooz's agent for service of process, and whether, accordingly, papers served on Gulf Associates have reached or will reach Firooz. In light of this uncertainty, this Court directs that service shall be made on Firooz Corporation by the methods specified in Judge Kevin T. Duffy's Opinion and Order of June 4, 1980, as modified by his order of June 14, 1980, in the consolidated Iranian cases in this district, *New England Merchants National Bank v. Iran Power Generation and Transmission Company, et al.* and following cases, 495 F.Supp. 73 (S.D.N.Y.1980). If no answering papers or other response from Firooz are received within 60 days of the date of service by the method outlined in Judge Duffy's order, a default judgment will be entered on behalf of Republic against defendant Firooz.

## Summary

Plaintiff's motion for summary judgment in lieu of complaint based on the guarantee of Habib and Hormoz Sabet for payment of principal in the amount of $1,200,000 and interest on that sum at a 12% annual rate from July 1, 1979 is granted against those defendants.

Defendant Hormoz Sabet may file pleadings asserting a counterclaim against plaintiff for damages suffered as a result of the sheriff's execution of the order of attachment against Hormoz Sabet.

A motion for default judgment against defendant Firooz Corporation on plaintiff's claim under the note will be granted if plaintiff complies with the service requirements indicated above and if Firooz fails to respond by the time indicated above.

As it appears that the remaining counterclaim by Hormoz Sabet may be resolved by agreement between the parties, and as it is uncertain whether Firooz Corporation will, if served as indicated above, answer plaintiff's motion, the case will be placed on the suspense docket of this Court, subject to reopening at the request of any party stating that that party is prepared to actively litigate the issues remaining in this case.

### On Motion for Reconsideration

Presently before the Court are defendant Hormoz Sabet's motions for reconsideration, for a stay of proceedings in this case while its counterclaims are resolved, for a stay pursuant to the Suggestions of Interest filed by the United States in Iranian-related cases in this district, or for a stay pending appeal to the Second Circuit Court of Appeals of this Court's Opinion and Order dated July 18, 1980, pursuant to Rule 62, F.R.Civ.P., and plaintiff's motions to strike the Third through Seventh counterclaims asserted by Hormoz Sabet and for an order directing entry of judgment in favor of plaintiff pursuant to Rule 54(b), F.R. Civ.P.

The Court assumes familiarity with its previous Opinion and Order, and will not repeat here either the factual background or the legal issues discussed in that Opinion.

### a) Motion for reconsideration

■ Hormoz Sabet has advanced no new facts or legal theories in support of his motion to reconsider, and, for reasons discussed at length in the July Opinion and Order, the Court remains of the opinion that plaintiff is entitled to summary judgment on the guarantee by Hormoz Sabet.

The motion to reconsider is granted and the request to modify or rescind the Court's previous Opinion and Order is denied.

### b) Stay pending resolution of counterclaims; motion to dismiss

■ As to the counterclaims asserted by defendant Hormoz Sabet, plaintiff's motion to strike the Third through Seventh counterclaims is granted, since these claims are inconsistent with the stipulation entered into by the parties settling Hormoz Sabet's motion to vacate plaintiff's attachment, and constitute no more than attempts to relitigate in different guise issues disposed of by this Order and the Court's previous Opinion and Order.

■ The first two counterclaims are for, at most, $401,000, an amount substantially lower than the $1,200,000 plus interest awarded to plaintiff by this Order and the Court's previous Opinion and Order. As stated in the previous Opinion, plaintiff has expressed its willingness to resolve the amount in dispute by agreement; if the parties cannot now stipulate to the amount of damages incurred as a result of the sheriff's levy upon the contents of the apartment, and so inform the Court within ten days of the date of this Order, the Court will refer the matter to a magistrate for a hearing and recommendations. Since the matters at issue on this counterclaim are not, however, intertwined factually with plaintiff's claim on the loan guarantee, the pendency of these counterclaims provides no basis for the delay of entry of judgment against Hormoz Sabet on plaintiff's claim. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1.

### c) Stay in light of proceedings in Iranian cases

■ In a letter dated October 10, 1980, the United States Attorney for the Southern District of New York expressed the position of the United States that the stay of proceedings requested in the Government's first Suggestion of Interest filed in this case is not applicable to defendants

**430**

Habib and Hormoz Sabet. This position logically extends to the further Suggestion of Interest filed by the Government in the Iranian cases following resolution of the hostage crisis. Accordingly, the Court determines that these Suggestions of Interest form no basis for a stay of execution of judgment against Hormoz Sabet.

**d) Entry of final judgment**

■ Beyond the factor discussed above, the absence of the pendency of factually-related counterclaims or any counterclaim for an amount in excess of the amount to which plaintiff is entitled under the loan guarantee, two other factors noted in *Curtiss-Wright, supra,* suggest that Rule 54(b) certification is appropriate in this instance. First, Hormoz Sabet is the only active litigant among the several defendants named here, a fact perhaps attributable to his New York residence; thus, it appears that granting Rule 54(b) certification here will not raise any substantial possibility of multiple appeals by the various defendants raising the same legal issues. Second, plaintiff has already lost substantial investment income (the difference between the current market rates and the amount set in the note) due to Hormoz Sabet's prolonging of this lawsuit with his motion for reconsideration, and further loss of interest income would be, as the Supreme Court recently ruled, a proper basis for finding that there is "no just reason for delay," *Curtiss-Wright, supra,* 446 U.S. at 11, 100 S.Ct. at 1467. Accordingly, the Court determines that there is no just reason for delay of entry of judgment, and plaintiff shall submit a judgment on ten days' notice in the amount of $1,200,000 plus interest at a 12% annual rate from July 1, 1979.

SO ORDERED.