[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs James Ambadjes and Ambadjes, Inc. (hereinafter Ambadjes) agreed to purchase two modular homes from the defendant. The parties entered into separate written agreements relating to both homes on or about May 19, 1988 and the plaintiffs paid a deposit of $3,750.00 on each home or a total deposit of $7,500. CT Page 4754 Subsequently, by mutual agreement, the contract on one home was cancelled and the parties agreed to transfer the deposit on the cancelled home of $3,750 to the other home on order. The contract for that remaining home, which is the subject of this law suit, was entered into evidence and marked Plaintiff's Exhibit 1.
The parties agreed that the home in question was to be produced on or about July 4, and thereafter, they mutually agreed to a production date of July 14, 1988. The plaintiff then requested a further extension of the delivery of the home pursuant to paragraph 4 of the agreement which provided that the delivery date could be delayed two weeks after production at the request of the purchaser. Thereafter on July 28th the plaintiff was still unable to accept delivery and sought a further extension. On July 28 the plaintiff went to the defendant's office in Chelsea, Massachusetts to negotiate this extension and did in fact make a further deposit of $5,863 which the defendant did accept. The terms of this "understanding" is in dispute. The plaintiff, through Mr. Ambadjes, testified that on July 28 when he paid the additional deposit, the defendant wanted to set up a firm delivery date on August 11, but the plaintiff told the defendant that the site contractor was not able to get a large bulldozer on the site until on or after August 17 and that he would only agree to a delivery date of August 11 if in fact the defendant were able to place the home on the site without the assistance of a large bulldozer. The defendant denies that the agreement of July 28 was conditioned upon their ability to place the home on the site without the plaintiff's assistance and that in fact the parties agreed to a firm delivery date of August 11, 1988.
Both parties agreed that the defendant's employee, William Heffernan, did come to Waterbury sometime after July 28 and prior to August 11, 1988 to take photographs of the site. The plaintiff, Mr. Ambadjes, testified that the reason Mr. Heffernan came to Waterbury to take pictures of the site was to determine whether the carrier delivering the home could obtain access to the site without the assistance of a bulldozer and that he would bring the photographs back to his office in Massachusetts so that his superiors could make that determination. Mr. Ambadjes further testified that prior to August 11, Mr. Heffernan came back to Waterbury to meet with the plaintiff and at that meeting, Mr. Ambadjes was present and Mr. Ambadjes business associate, Dr. Palesty was also present. Mr. Heffernan indicated that the photographs were reviewed and that the carriers could place the home on the lot without the assistance of a large bulldozer. Mr. Ambadjes testified that based on that representation of Mr. Heffernan that he agreed to take delivery on August 11, with the express proviso that the carriers could place the home on the job site. On August 11 the home was delivered to the job site but the trucker felt it was impossible for him to place the home on the CT Page 4755 job site and refused to do so. The carrier then left with the home and the plaintiff instituted this action claiming breach of contract and seeks the return of his deposit.
The court finds that the plaintiff's version of the events subsequent to July 28 to be more credible. The court finds that the agreement on July 28 was as Mr. Ambadjes testified, that is, that he would only take delivery on August 11 if he was assured that the carrier would place the home on the site. The court finds that Mr. Heffernan came to Waterbury to take pictures of the site so that he could satisfy his superiors that the home could be delivered on the site and that after he took the pictures, he returned to Waterbury and assured the plaintiff that the home would be delivered on site. In addition, Mr. Ambadjes story was corroborated by the testimony of Dr. Palesty, who testified that he was present on the date Mr. Heffernan came to Mr. Ambadjes office and that he specifically recalled that Mr. Heffernan said that he would place the house on the site. The agreement of July 28 was a novation which was supported by consideration and was therefore enforceable. Federal Deposit Insurance Corp. v. Hyer, 413 N.Y.S.2d 939 (1979). The defendant claims that the plaintiff, in effect, alleged a "breach of contract" in his complaint and therefore cannot recover on any other theory. If the evidence regarding the agreement of July 28 did not conform to the pleading as suggested by the defendant, that it was incumbent upon the defendant to strike that evidence on the grounds that it was not within the issues. Windsor v. Hawkins, 130 Conn. 669, 670
1944. The defendant permitted that evidence to be introduced and it is now to late to make this claim.
The court further finds that the agreement marked Plaintiff's Exhibit 1 was unclear and/or ambiguous as to the obligations of the defendant as to place of delivery. The defendant attempted to resolve this ambiguity with its introduction of a "policy" letter (Defendant's Exhibit 1) which the defendant testified was given or sent to the plaintiff prior to the time the parties entered into the written signed agreement and which stated the Chelsea Homes delivered their homes only to the end of the paved road. Although the plaintiff does not deny the receipt of this letter, there was no evidence that he in fact read it and there certainly was no evidence from which the court could find that he was legally bound by the provisions of that letter. (Defendant's Exhibit 1). In addition, the "policy" letter provided for a written acknowledgement which was never signed by the plaintiff. In any event, if the defendant intended to incorporate the provisions of the "policy" letter (Defendant's Exhibit 1) into the signed agreement (Plaintiff's Exhibit 1), the defendant would have done so, which the court finds was not in fact done. The agreement marked plaintiff's Exhibit, 2 prepared by the defendant was silent as to the specific place of delivery or at best is ambiguous in CT Page 4756 that regard and therefore must be construed against the draftsman. J.J. Newberry Co. v. Kingston Plaza, Inc., 297 N.Y.S.2d 184, 186.
The court finds that the defendant did fail and refused to deliver the modular home as agreed and that the defendant should return to the plaintiff the deposit in the amount of $13,363. Judgment may enter accordingly.
PELLEGRINO, J.