■ PHOENIX GARDEN RESTAURANT, INC., et al., Respondents, v JOSEPH CHU et al., Appellants, et al., Defendants. [667 NYS2d 20] —Order, Supreme Court, New York County (Beverly Cohen, J.), entered February 6, 1997, which, inter alia, denied the cross-motions of defendants Joseph Chu and Stadium Office Development Corp. for summary judgment dismissing the first through third, fifth and seventh through eleventh causes of action in the 1992 complaint on the ground that such cross-motions were untimely, having been made on the eve of trial, unanimously modified, on the law, and the cross-motions granted to the extent of dismissing the seventh through eleventh causes of action in the 1992 complaint and otherwise affirmed, without costs.

Order, Supreme Court, New York County (Lorraine Miller, J.), entered June 13, 1997, which, inter alia, denied the motion of defendant Joseph Chu for summary judgment dismissing the 1997 complaint, unanimously modified, on the law, and the motion granted to the extent of dismissing the fourth, fifth and sixth causes of action in the 1997 complaint and otherwise affirmed, without costs.

In this action arising from a 25 year second lease, dated May 10, 1991, for premises housing plaintiff restaurant, the initial issue to be resolved is the effect on defendants' motions of the recent amendment to CPLR 3212 (a) which, in the absence of a court order directing otherwise, requires that a motion for summary judgment "shall be made no later than [120] days after the filing of the note of issue, except with leave of court on

good cause shown." (L 1996, ch 492, approved Aug. 8, 1996, eff Jan. 1, 1997.) The note of issue in this action was filed in November 1995.

While there have been differing trial level decisions on the issue of whether the new amendment to CPLR 3212 (a) should be applied prospectively or retroactively (*cf., Carlstrand v Kerwin*, NYLJ, Mar. 12, 1997, at 31, col 3 [not applicable to 1996 or earlier notes of issue]; *Auger v State of New York*, 171 Misc 2d 866 [120 days commences to run from letter dated May 3, 1996 setting date for trial]; *Tananbaum v Huntington Hosp.*, NYLJ, June 2, 1997, at 34, col 3 [120 days commences on effective date of amendment, January 1, 1997]; *Moreno v Pilevsky*, NYLJ, July 29, 1997, at 22, col 1 [120 days commences January 1, 1997]; *DeJesus v New York City Tr. Auth.*, 173 Misc 2d 918 [120 days commences January 1, 1997]), we think the better view is reflected in the latter three decisions, which recognize that a purely prospective application undermines the statute's direct purpose of eliminating motions made on the eve of trial. However, references in those decisions to retroactive as opposed to prospective application of the amendment are not entirely accurate. "What is really meant when it is said that procedural statutes are generally retroactive is that they apply to pending proceedings, and even with respect to such proceedings they only affect procedural steps taken after their enactment * * * Actually, therefore, such statutes are not retroactive at all, but are prospective under the rule that procedural matters are governed by the law in force when they arise" (McKinney's Cons Laws of NY, Book 1, Statutes § 55, at 117-118). Thus, applying the amendment to pending cases, such as the one before us, where notes of issue had been filed before the effective date of the amendment, but providing that the 120 day period runs from the effective date of the amendment, eliminates the long-resented practice, by many lawyers, of seeking to delay trials by filing last minute motions for summary judgment, while still preventing the inequitable results of retroactively applying the statute. In addition, parties are not prejudiced inasmuch as the statute applies to all parties equally and allows the court to waive the requirements for good cause (*see, Citibank v Olson*, NYLJ, June 18, 1997, at 32, col 3).

As to the merits of defendants' motions, although plaintiff tenants allege a valid claim for breach of the covenant of quiet enjoyment for the period November 1991 through July 1992, during which they were either actively or constructively evicted and for which defendant landlords gave a rent abatement,

there was no payment of rent or waiver thereafter and, therefore, plaintiffs' claims should be dismissed to the extent they seek recovery for the period commencing after July 1992 (*see, Herstein Co. v Columbia Pictures Corp.*, 4 NY2d 117, 121). Plaintiffs' causes of action for "constructive eviction" are dismissible as duplicative of those for breach of the covenant of quiet enjoyment (*see, supra; Elkman v Southgate Owners Corp.*, 233 AD2d 104), and their cause of action for breach of the lease is dismissible as duplicative of those for breach of the covenant of good faith and fair dealing and the covenant of quiet enjoyment. The claim under RPAPL 853, the eleventh cause of action in the 1992 action, has no factual support, and should be dismissed. However, plaintiffs do make out a prima facie case of fraudulent and negligent misrepresentations, breach of the implied covenant of good faith and fair dealing and tortious interference with economic relations. Such claims are based upon defendants' alleged failure to disclose, at the time the second lease was executed, that they were proceeding with excavation work under the demised premises without having made the requisite filings or securing the proper underpinnings, although they had previously been apprised of the need for both. Such failure led to an order to vacate by the City Department of Buildings and, ultimately, to the closing of plaintiffs' restaurant.

Plaintiffs' claims for money had and received and punitive damages should also be dismissed. An action for money had and received is an action in implied contract that the law creates in the absence of an agreement when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another (*Parsa v State of New York*, 64 NY2d 143, 148). Here, however, the second rider to the second lease specifically provides that, in the event of plaintiff tenant's default under the lease, defendant landlord may retain the entire balance of the $250,000 additional security deposit or "key money". Likewise, assuming the truth of plaintiffs' factual allegations, they fail to demonstrate any conduct by defendants directed to the public generally or which satisfies the very high threshold of moral culpability required to support an award of punitive damages.

We have considered appellants' other points and find them unpersuasive. Concur—Sullivan, J. P., Milonas, Mazzarelli and Andrias, JJ.