OPINION OF THE COURT
Charles Edward Ramos, J.
Defendants TD Waterhouse Investor Services, Inc. (TD Waterhouse) and John Chapel, president of defendant, move pursuant to CPLR 3211 (a) (1) and (7); 3016 and 3013 to dismiss the action.
The issue in this action is whether a broker is required when making a margin call to give a customer notice and an opportunity to cure by delivering additional cash or securities when the equity in the account falls below the margin maintenance requirement.
Plaintiff Youm Fesseha established a TD Waterhouse trading account on July 27, 1999. On Friday, April 14, 2000, a significant decline in the stock market resulted in a margin deficiency in plaintiffs account. Plaintiff alleges that he telephoned TD Waterhouse in the afternoon of April 14, 2000 and was informed of both the deficiency and that if he delivered a check to TD Waterhouse by the close of business on Monday, April 17, 2000, the securities in his account would not be sold. Plaintiff allegedly arrived at TD Waterhouse on Monday, April 17, 2000, at 11:30 a.m. with a check for an undisclosed amount. *255 However, Mr. Fesseha was informed that TD Waterhouse had sold his securities at a loss earlier that morning when the major stock indexes further declined on the morning of April 17.
Plaintiff’s complaint consists of six causes of action: (1) breach of contract against TD Waterhouse; (2) breach of fiduciary duty against TD Waterhouse; (3) aiding and abetting a breach of fiduciary duty against Chapel; (4) consumer fraud in violation of General Business Law § 349 against TD Water-house; (5) money had and received against TD Waterhouse; and (6) conversion against TD Waterhouse. In addition to damages, plaintiff seeks rescission of the liquidated trades, punitive and statutory damages, attorneys’ and experts’ fees, costs, and an injunction requiring TD Waterhouse to notify customers before liquidating securities to satisfy margin deficiencies.
Breach of Contract Claim
Plaintiff’s contract claim is dismissed. The account application executed by plaintiff refers to and incorporates the customer agreement, which provides:
“I [the customer] hereby grant you [TD Water-house] a continuing lien, security interest and right of set-off in [all securities or other property which you may hold, carry or maintain for any purpose] whether now owned by me or hereafter acquired. You may hold securities and other property as security for the payment of any liability or indebtedness of me to you, and you shall have the right to transfer such securities and other property in any of my accounts from or to any other of my accounts, when in your judgment such transfer may be necessary for your protection. In enforcing your lien you shall have the right to sell, assign and deliver all or any part of the securities or other property in any of my accounts when you deem it necessary for your protection.” (Emphasis added.)
This provision gives TD Waterhouse the right to liquidate plaintiff’s position. (See, First Union Discount Brokerage Servs., Inc. v Milos, 997 F2d 835, 838 [11th Cir 1993] [the right to liquidate securities is granted by contract]; Conway v Icahn & Co., Inc., 16 F3d 504, 508 [2d Cir 1994].) It is silent as to notice and an opportunity to cure. The court will not accept plaintiff’s invitation to imply a requirement of notice and an opportunity to cure from this silence. Unless the silence creates an ambiguity or renders it unclear, the court cannot rewrite the contract. (Wallace Indus. v Salt City Energy *256 Venture, 233 AD2d 543, 545 [3d Dept 1996].) Plaintiff admits that the agreement is not ambiguous. (Plaintiffs corrected memorandum of law in opposition to defendant’s motion to dismiss at 9.)
Alternatively, plaintiff relies on the truth in lending disclosure in support of his argument that defendant breached the contract by liquidating plaintiffs account without notice and an opportunity to cure. The court rejects plaintiffs reliance on the truth in lending disclosure to create such a requirement. The disclosure provides:
“All securities in any of your accounts are collateral for any debit balances — i.e., for any balances owed by you to us. A lien is created by those debits to secure the amount of money owed to us. This means securities in your accounts can be sold to reduce or liquidate entirely any debit balance in your account, as is authorized in our Margin/Loan Consent and Customer Agreement covering margin accounts.
“In connection with margin accounts, if there is a decline in the market value of your securities which are collateral for your debts, it may be necessary for us to request additional margin. Ordinarily, a request for additional margin will be made when the equity in the account falls below our margin maintenance requirements, which may change from time to time without notice — the ‘equity’ being the excess market value of the securities in the account over the debit balances. We retain the right to - require additional margin any time we deem it desirable, and these margin calls can be met by delivery of cash or additional marginable securities.” (Emphasis added.)
The term “ordinarily” qualifies the sentence from which an obligation to notify and an opportunity to cure would arise. Implicit in this qualification is that there may be circumstances when there will be no request if the equity falls below the requirement. Moreover, the initial paragraph specifically provides that the account may be liquidated. It does not provide a time period for notice and an opportunity to cure. Rather, it refers to the Margin/Loan Consent and Customer Agreement, which is discussed above.
Likewise, plaintiff cannot use the implied covenant of good faith and fair dealing to insert a provision requiring a period of *257 notice and an opportunity to cure a margin deficiency. Every contract contains a covenant of good faith and fair dealing, but it is not without limits. (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995].) With regard to margin agreements, which vest broker-dealers with broad discretion to liquidate (Cauble v Mabon Nugent & Co., 594 F Supp 985, 992 [SD NY 1984]), courts have equated the covenant of good faith and fair dealing with an obligation to exercise that discretion “reasonably and with proper motive * * * not * * * arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.” (In re Kaplan, 143 F3d 807, 819 [3d Cir 1998].) However, the covenant of good faith does not mandate notice and an opportunity to cure because failure to make a margin call is not necessarily arbitrary, capricious or inconsistent with reasonable expectations when the contract specifically provides for liquidation without notices. Otherwise, the court would be impermissibly inserting a term which the parties failed to insert. (Mitchell v Mitchell, 82 AD2d 849 [2d Dept 1981].)
Plaintiff also relies on Regulation T, National Association of Securities Dealers (NASD) rule 2520 and New York Stock Exchange (NYSE) rule 431 in support of his argument that the covenant of good faith and fair dealing requires defendant to make a margin call before selling plaintiff’s securities and an opportunity to cure a deficiency. Plaintiff claims that implicit in any mention of the term “margin calls” in Regulation T, e.g., definition of “margin call” and “payment period,” or the rules is a requirement that defendant make a margin call before liquidating. Plaintiffs reliance is misplaced. Regulation T and the rules are intended to protect the integrity of the market and to do so, brokers must be able to exercise their discretion without fear of subsequent claims of bad faith when market conditions improve. (Capital Options Invs., Inc. v Goldberg Bros. Commodities, Inc., 958 F2d 186, 190 [7th Cir 1992].) Neither Regulation T nor the rules create a private right of action. (See e.g. Berliner Handels-und Frankfuter Bank, N.Y. Branch v Coppola, 214 AD2d 426, 427 [1st Dept], lv denied 86 NY2d 829 [1995]; Bennett v United States Trust Co. of N.Y., 770 F2d 308, 311 [2d Cir 1985], cert denied 474 US 1058 [1986]; Establissement Tomis v Shearson Hayden Stone, Inc., 459 F Supp 1355, 1360-1361 [SD NY 1978].) Likewise, plaintiff has not identified language in any of these rules that imposes an obligation to give customers notice of and an opportunity to cure margin deficiencies. Indeed, Regulation T provides that a broker may *258 impose additional requirements or take action for its own protection (12 CFR 220.1 [b] [2]), as defendant has done here.
Finally, plaintiff fails to address defendant’s argument that defendant’s alleged oral promise on April 14, 2000 to permit plaintiff time to satisfy the margin call is not enforceable for lack of consideration. Plaintiff has not alleged any consideration for defendant’s alleged extension of time to cure. Am extension of time to pay a loan must be supported by consideration. (Federal Deposit Ins. Corp. v Hyer, 66 AD2d 521 [2d Dept 1979], appeal dismissed 47 NY2d 951 [1979].) Likewise, since plaintiff borrowed from defendant when he traded on margin, plaintiff’s alleged extension of time to cure the deficiency in his trading account must be supported by consideration. Therefore, defendant’s motion to dismiss the first cause of action is granted.
Consumer Fraud
To state a cause of action under the consumer fraud statute (General Business Law § 349), plaintiff must allege: (1) “that the challenged act or practice was consumer-oriented”; (2) “that it was misleading in a material way”; and (3) “that the plaintiff suffered injury as a result of the deceptive act.” (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000].)
According to plaintiff, the deceptions are: (1) the contract is materially misleading because it fails to state that defendant can liquidate plaintiff’s account at any time without notice, and (2) defendant is “clearly” required under the contract to give notice and an opportunity to cure, which defendant failed to do.
Plaintiff’s consumer fraud claim pertaining to the silence of the contract is dismissed. First, it is inconsistent with the other alleged deception. The contract cannot be deceptive based on its silence while at the same time specify the activity on which it is allegedly silent. The court acknowledges that defendant’s reservation of the right to liquidate could be easier to understand. Indeed, a modification to NASD rule 2341 was approved by the Securities and Exchange Commission on April 26, 2001 which “require [s] its members to deliver to their non-institutional customers, prior to or at the opening of a margin account, a specified disclosure statement that discusses the operation of margin accounts and the risks associated with trading on margin. NASD regulation also proposes to require NASD members to deliver the specified disclosure statement to their non-institutional customers with margin accounts on an annual basis.” The notice provides in part:
*259 “The firm can sell your securities without contacting you. Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities in their accounts to meet the call unless the firm has contacted them first. This is not the case. Most firms will attempt to notify their customers of margin calls, but they are not required to do so. However, even if a firm has contacted a customer and provided a specific date by which the customer can meet a margin call, the firm can still take necessary steps to protect its financial interests, including immediately selling the securities without notice to the customer.
“You are not entitled to choose which securities in your margin account(s) are liquidated or sold to meet a margin call. Because the securities are collateral for the margin loan, the firm has the right to decide which security to sell in order to protect its interests.
“The firm can increase its ‘house’ maintenance margin requirements at any time and is not required to provide you advance written notice. These changes in firm policy often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the member to liquidate or sell securities in your account(s).
“You are not entitled to an extension of time on a margin call. While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.” (NASD rule 2341.)
(See also Geldermann & Co., Inc. v Lane Processing, Inc., 527 F2d 571 [8th Cir 1975] [“In case of my failure to maintain with you at all times such margin as you may deem adequate for your protection, you may, without prior demand or notice to me, Sell and/or Purchase such commodities as you may consider to fully protect my account”].) However, defendant’s disclosure of its reservation of the right to liquidate is not, as plaintiff admits, ambiguous.
Plaintiff’s second alleged deception is also defective. Mr. Fesseha cannot allege a deceptive act or practice based on the reservation of a right disclosed in the contract. (Lewis v Hertz Corp., 181 AD2d 493 [1st Dept 1992], lv dismissed 80 NY2d *260 893 [1992].) Moreover, plaintiff’s claim is a private contract dispute, which is not the proper subject of a consumer fraud claim. (Gershort v Hertz Corp., 215 AD2d 202, 203 [1st Dept 1995].)
Finally, section 349 does not apply here because, in addition to being a highly regulated industry, investments are not consumer goods. (Berger v E*Trade Group, Inc., 2000 WL 360092 [Sup Ct, NY County].) “[Securities instruments, brokerage accounts and services ancillary to the purchase of securities have been held to be outside the scope of the section.” (Id. at *4.)
Breach of Fiduciary Duty
Plaintiff’s breach of fiduciary duty claim is dismissed for two reasons. First, “under New York law * * * [i]n the absence of discretionary trading authority,” which is not alleged here, “a broker does not owe a general fiduciary duty to his client.” (Bissell v Merrill Lynch & Co., Inc, 937 F Supp 237, 246 [SD NY 1996], affd 157 F3d 138 [2d Cir 1998]; see also, Fekety v Gruntal & Co., 191 AD2d 370 [1st Dept 1993].) Second, plaintiffs claim for breach of fiduciary duty is duplicative of his contract claim. (Kaufman Org. v Graham & James, 269 AD2d 171, 173 [1st Dept 2000]; Leather v United States Trust Co., 279 AD2d 311 [1st Dept].)
Claim For Aiding and Abetting Against Chapel
Without a claim for breach of fiduciary duty, plaintiffs claim for aiding and abetting that breach must also fall. Therefore, the only claim against John H. Chapel is dismissed.
Claim For Money Had and Received
The elements of a claim for money had and received are: (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of the money; and (3) under principles of good conscience, defendant should not be allowed to retain the money. (Richardson Greenshields Sec., Inc. v Lau, 819 F Supp 1246, 1268 [SD NY 1993].) Plaintiff claims that defendant wrongfully collected commissions from plaintiff in connection with the disputed liquidation. However, plaintiff also alleges that defendant refunded those commissions, so plaintiff cannot satisfy the elements of such a claim. Moreover, plaintiffs contract with defendant precludes this cause of action. An action for money had and received is not founded on an express contract, but the law creates such an agreement in the absence of such an agreement. (Matter of Witbeck, 245 AD2d 848, 850 [3d Dept 1997].) Accordingly, when a contract *261 addresses the subject of a claim for money had and received, the claim cannot lie. (Phoenix Garden Rest, v Chu, 245 AD2d 164, 166 [1st Dept 1997].) Therefore, the fifth cause of action is dismissed.
Conversion
Conversion is an “unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner’s rights.” (Peters Griffin Woodward v WCSC, Inc., 88 AD2d 883 [1st Dept 1982].) The alleged conversion here is the liquidation of plaintiffs securities, thus depriving plaintiff of entitlement to those assets. However, plaintiffs contract claim is identical in that he alleges that defendant wrongfully liquidated plaintiffs margin account. A contract claim cannot be recast as one for the tort of conversion. (Yeterian v Heather Mills, 183 AD2d 493, 494 [1st Dept 1992].) Therefore, the sixth cause of action is dismissed.
Accordingly, it is ordered that defendants’ motion is granted and the action is dismissed.